No. 87,374

WICHITA EAGLE AND BEACON PUBLISHING COMPANY, INC., and ROBERT SHORT, *Appellants/Cross-Appellees*, v. CHARLES E. SIMMONS, in his capacity as Secretary of Corrections for the State of Kansas, *Appellee/Cross-Appellant*.

(50 P.3d 66)

Opinion filed July 12, 2002.

*William P. Tretbar*, of Fleeson, Gooing, Coulson & Kitch, L.L.C., of Wichita, argued the cause, and *Lyndon W. Vix*, of the same firm, was with him on the briefs for appellants/cross-appellees.

*Lisa A. Mendoza* and *Edward F. Britton, Jr.*, special assistant attorneys general, argued the cause and were on the brief for appellee/cross-appellant.

The opinion of the court was delivered by

ABBOTT, J.: Wichita Eagle and Beacon Publishing Company, Inc. (Wichita Eagle) and Robert Short, a reporter with Wichita Eagle, sought an order and judgment in mandamus to compel Charles Simmons, Secretary of Corrections for the State of Kansas, to provide them with access to and/or copies of correctional records, including documents which would identify releasees who were charged with murder or manslaughter from 1996 through 1999, under the Kansas Open Records Act (KORA), K.S.A. 45-215 *et seq*. The district court determined that supervision history records were privileged pursuant to K.S.A. 22-3711 and K.S.A. 45-221(a)(20) and that the work product doctrine would exempt documents and other tangible things prepared in anticipation of litigation from disclosure under KORA. In addition, the district court found that production of the records would be contrary to the public policy encouraging self-critical analysis and that redaction of the remaining information by the Secretary of Corrections would leave little to be disclosed. The district court stated that Wichita Eagle and Short could glean the remaining information from alternate and more appropriate sources.

Short wrote to Bill Miskell at the Kansas Department of Corrections on September 7, 1999, pursuant to KORA, and requested a list of the crimes reviewed by serious incident review boards during the previous 3 years. Short also requested the name of each inmate who committed a crime subject to review of serious incident review boards, and the date, location, and nature of the crime.

The Department of Corrections' internal documents define a "serious incident" as "[a]n event, situation, or occurrence which the Serious Incident Review Board Executive Committee considers will expose the Department to liability, or which in the judgment of the Secretary either has the potential to bring public crit-

icism to the Department or constitutes possible grounds for disciplinary action . . . ."

Timothy Madden, Chief Legal Counsel for the Department of Corrections, sent a written denial of the request on September 10, 1999. Madden wrote:

"The requested correctional records are not records open to the public under K.S.A. 45-221(a)(29). While limited information pertaining to an identifiable inmate or releasee is to be provided from correctional records, your request does not identify either a specific inmate or specific released offender. Nor do you request information concerning specific inmates or released offenders. Rather, your request seeks confidential information concerning the Serious Incident Review Board and its working documents, materials and records.

"The Serious Incident Review Board is convened at the direction and under the supervision of the Chief Legal Counsel or his designee to review all serious incidents and prepare a report of findings for the Chief Legal Counsel. Any report to the Secretary of Corrections concerning the findings of the Board, or any recommendations to the Secretary, are intended to be strictly confidential [and] . . . are privileged under the rules of evidence and protected from disclosure under K.S.A. 45-221(a)(2), and as additionally provided by K.S.A. 60-426 (lawyer-client privilege), K.S.A. 60-451 (subsequent remedial measures), and K.S.A. 60-226(b)(1) (in anticipation of litigation)."

Madden also noted that K.S.A. 22-3711 expressly prohibited the release of certain confidential parole records, including parole supervision history, to anyone. He wrote that "[t]he Performance Audit Report contains information which, when combined with the information you have requested, will directly or indirectly enable anyone to easily discern the supervision history of identifiable offenders in violation of state law."

On September 13, 1999, Short sent another letter to Miskell requesting the names of persons charged with murder while under the supervision of the parole office of the Department of Corrections from May 1, 1996, to June 31, 1999.

Madden reaffirmed his denial of Short's first request for documents in a letter dated September 16, 1999, stating that the "Open Records Act simply does not allow disclosure of the information you seek in this request." Madden reiterated that the Department of Corrections was authorized to release the name, photograph, identifying information, disciplinary record, supervision violations,

and location of parole office, etc., for specific individuals identified in connection with Short's second request.

The Secretary of Corrections furnished Short with copies of "a considerable volume of documents" containing information concerning parolees who were convicted of crimes committed from 1996 through 1999. The Secretary of Corrections also provided a copy of a policy and procedure document discussing serious incident review boards.

The Secretary of Corrections refused, however, to provide documents related to the efforts of individual serious incident review boards, or documents identifying or discussing incidents where parolees were charged with murder or manslaughter from 1996 through 1999 whose cases were not yet adjudicated. The Secretary of Corrections also refused to furnish redacted copies of records pursuant to K.S.A. 45-221(d).

On November 12, 1999, Wichita Eagle and Short filed a petition in the District Court of Shawnee County, Kansas, requesting that the court grant an order in mandamus compelling the Secretary of Corrections to grant access to or copies of all nonexempt public records identified in their prior requests. The petition contained paragraphs outlining the reasons why Wichita Eagle and Short sought the release of the requested documents:

"8. Parole officers employed by the DOC are responsible for the supervision of former inmates of correctional institutions who are released on parole, conditional release or postrelease supervision status. K.S.A.75-5214 and 75-5216.

"9. It is contemplated that former inmates will be assigned, at the time of their release, 'to the appropriate level of supervision,' pursuant to criteria for which defendant is responsible. K.S.A. 1998 Supp. 22-3717(k).

"10. Thereafter, parole officers are expected to:
. . . keep informed of the conduct and condition of a parolee or an inmate on postrelease supervision and use all suitable methods to aid, encourage and bring about improvement in the conduct and condition of such parolee or inmate or postrelease supervision.
(K.S.A. 75-5216).

. . . .
"12. A performance audit of the DOC's procedures in supervising parolees and individuals on postrelease supervision status was recently undertaken by Legislative Division of Post Audit, an arm of the Kansas Legislature.

"13. The audit report, released in August, 1999, cited a number of categories in which the DOC is doing its job well. The report also included several disturbing findings, including the following:

-half the parole officers and supervisors surveyed felt the 'grid' used by the DOC to guide parole officers in deciding what sanctions to impose for serious parole violations was not adequate to protect the public from harm;

-few parole officers are meeting all of the DOC's requirements for supervision parolees; and

-in a review of incidents involving 28 parolees who were charged with serious crimes while on parole during the past three years (22 murders, four rapes, kidnapping, arson and other offenses), the parole officers had failed to follow the sanctioning grid 42 percent of the time.

"14. With respect to the 28 parolees charged with serious crimes while on parole, the report further stated that:

Six of these parolees hadn't violated any of their parole conditions before committing new crimes. They'd either complied with all their parole requirements or were arrested and charged soon after being released . . .

For the remaining 22 parolees, we identified 43 incidents where they'd violated the conditions of their parole before committing the new crimes, and sanctions should have been imposed on them.

"15. The report identifies shortcomings in the performance of the parole officers involved in most of the 22 cases summarized above, including failures by the parole officers involved to carry out all of their supervisory responsibilities; failures to issue arrest warrants quickly when parolees failed to report or absconded, or could not be located; failures of timely communication between different offices and officers; failures involving parolees who 'fell through the cracks' because of confusion over who would supervise them; and, in some cases, failures to properly assess the parolee's 'risk level' or substance abuse history."

Following a brief period of discovery, both parties to the litigation filed motions for summary judgment. In its decision, the district court found the following facts to be uncontroverted:

"1. Defendant is the duly-appointed Secretary of Corrections for the State of Kansas and the chief executive officer of the Kansas Department of Corrections ("DOC").

"2. The DOC is a 'public agency' within the meaning of K.S.A. 45-217(e)(1).

"3. On September 7 and 13, 1999 and on October 11, 1999, plaintiffs made written requests for access to certain records of the DOC.

"4. The records identified in Plaintiffs' request for access included the following:

documents which identify by name all inmates, parolees and/or others supervised by the DOC who have been charged with murder or manslaugh-

ter during 1996, 1997, 1998, and 1999;

documents containing details regarding the crimes of which these individuals have been accused;

minutes of the meetings of any serious incident review board in which the crimes or alleged crimes of these individuals are discussed;

notes, decisions, reports, and/or documents reflecting decisions or actions taken by any of the serious incident review boards which have considered the above-referenced crimes and parolees;

documents which identify the members of serious incident review boards during 1996, 1997, 1998, 1999; and

documents which discuss the purpose of the serious incident review boards, how its members are selected and compensated, etc.

"5. The DOC has disclosed to Plaintiffs a copy of the Kansas Department of Corrections Internal Management Policy and Procedure 12-118, Security and Control: Serious Incident Review Board Actions Pending and Subsequent to Incident Reviews, detailing the purpose of the serious incident review board, how often it meets, and how its members are selected.

"6. A 'serious incident' is an event, situation, or occurrence which, in the judgment of the DOC review committee, will expose the DOC to liability. It may also be an event, situation, or occurrence which in the judgment of the Secretary of Corrections either has the potential to bring public criticism to the DOC or constitutes possible grounds for disciplinary action based on personal conduct detrimental to state service which could cause undue disruption of work or endanger the safety of persons or property. The review committee is responsible for determining, on a case-by-case basis, whether review of a serious incident by the Serious Incident Review Board is appropriate. The review committee is comprised of the Secretary of Corrections, a Deputy Secretary of Corrections, the Chief Legal Counsel, or their designees.

"7. The DOC maintains a number of files, forms, records, and instruments relative to post-incarceration supervision of offenders in the custody of the Secretary of Corrections. One of these is the parole supervision file. The parole supervision file is comprised of the following documents and information concerning a specific offender: chronological entries; offender report forms; urinalyses test results and information; Permits to Leave State; Third Party Notification Forms; B/I Reports (reduced supervision phone-in reporting); AA/NA attendance slips; pay stubs; Risk and Needs Assessment and Reassessment Coding Forms; Movement and/or Master Records; other Offender Management Information System information; Good Time Award Records; Supervision Plan(s); Restitution Information; and Offender Financial Statement(s). It also contains Violation Report(s); Order(s) to Arrest and Detain; Parole Violation Warrant(s) and NCIC entries; Warrant Withdrawal Form(s); Statement of Charges; Notice of Preliminary Hearing; Summary of Preliminary Hearing; Notice of Revocation Hearing; Transportation Memo(s); Diversion Agreements; Case Reports/Discharge Recommenda-

tions, Informational Reports, etc.; Acknowledgment of Gun Law, Grievance Procedure, and Informant Policy; and Special Conditions. In addition, it contains Probation and Parole Rules; Interstate Compact Documents; Certificate of Release; Pre-Parole Report; Report of Parole Plan; Reception and Diagnostic Unit, Diagnostic Report and other case material; Certificate of Identification; Case Review; Investigation Requests and Replies; any correspondence concerning offender; law enforcement contact information; letters from citizens; mental health information; substance abuse reports; inquiries regarding child support; any prior parole material; Release of Information forms; and information concerning the offender's victims(s). It may also contain U.S. Department of Justice, Federal Bureau of Investigation, and Kansas Bureau of Investigation 'rap sheets.'

"8. The DOC has denied to grant Plaintiffs access to all the documents for which plaintiffs had made written request."

The Secretary of Corrections asserted that the district court did not have jurisdiction over the records because the requested records were not "public records" within the definition of KORA. In a memorandum decision and order dated February 7, 2001, the district court found it had jurisdiction in that the records sought by Wichita Eagle and Short were public records within the scope of KORA.

The district court wrote in its first memorandum decision and order that although the Secretary of Corrections had identified information that could be found in an offender's parole information file, "the Court is still unable to determine if all the information sought by Plaintiffs falls within an exemption to disclosure under KORA." Instead of ruling that the Secretary of Corrections had failed to meet its burden of proving that its documents qualified for an exemption to disclosure under KORA, however, the court decided to conduct an in-camera inspection of five sample records pursuant to K.S.A. 45-222(b).

After reviewing a sample of the requested records in camera, the district court released its findings of fact and conclusions of law in a second memorandum decision and order dated April 10, 2001. First, in regard to Wichita Eagle and Short's request for documents identifying members of the serious incident review boards from 1996-1999, the court found the members' names were not exempt from disclosure under KORA and removed the order

for protective seal on the Secretary of Corrections' response to an interrogatory naming the individuals.

Next, the district court determined that "most of the requested records are 'supervision history.' " The Secretary of Corrections had asserted that it could not release the requested records under K.S.A. 22-3711. The district court found a "direct conflict" between K.S.A. 45-221(a)(29), the open records provision pertaining to correctional records, and K.S.A. 22-3711, a provision mandating that certain correctional records, including the supervision history of an inmate, shall not be disclosed. The court wrote:

"KORA was passed by the legislature 'to insure public confidence in government by increasing the access of the public to government and its decision-making processes. This increases the accountability of governmental bodies and deters official misconduct.' [Citation omitted.] However, here, the Court is presented with a separate statutory provision specifically disallowing 'supervision history' from being disclosed. Therefore, rather than release the information the legislature specifically enacted a provision to protect, the Court will find in favor of exempting records that constitute 'supervision history' from disclosure. Once the information has been released to the public it cannot be undone and the privilege will have been violated. Consequently, the Court finds this to be the most appropriate result under current Kansas law."

The district court also considered the Department of Corrections' claim that the serious incident review board's report to the Secretary of Corrections was prepared in anticipation of litigation and should be held strictly confidential "to encourage constructive self-criticism." The district court wrote:

"Despite the Court's inclination to liberally grant parties access to public records under KORA, the Court also recognizes that in this situation there is a strong public policy reason for denying disclosures of the requested records. The DOC conducts the serious incident review boards as a form of self-evaluation, facilitating ongoing self-analysis and improvement. Disclosure of the information recorded in these sessions would almost certainly discourage the DOC from conducting such self-evaluation, thus a direct benefit arises from denying access to [Wichita Eagle and Short]."

The district court also found that KORA provision K.S.A. 45-221(a)(20) specifically exempts "[n]otes, . . . recommendations or other records in which opinions are expressed or policies or actions are proposed." Therefore, the court found that "the notes

and recommendations that were formulated by the serious incident review board are not discoverable under KORA."

Moreover, the district court determined that despite its determination that KORA did not require disclosure of the requested documents, at least one of the documents reviewed in camera supported the application of KORA's "work product" exemption, K.S.A. 45-221(a)(25).

Wichita Eagle and Short moved for an order to preserve the records inspected in camera and filed a motion to alter or amend judgment pursuant to K.S.A. 60-259(f). The motion raised three grounds for altering or amending the judgment. First, Wichita Eagle and Short asserted that the district court failed to apply the fundamental rule of statutory construction that a specific statute controls a more general statute when it determined that K.S.A. 22-3711 prevailed over KORA (K.S.A. 45-221(a)(29)[A]). Second, Wichita Eagle and Short argued that the district court failed to determine whether their record requests described any other public records of a character other than those submitted for in-camera review. Third, Wichita Eagle and Short argued that the district court should order the Secretary of Corrections to furnish them with redacted copies of the requested records pursuant to K.S.A. 45-221(d).

In its memorandum decision and order dated May 23, 2001, the district court addressed Wichita Eagle and Short's motion to alter or amend judgment. Observing that although it agreed K.S.A. 45-221(a)(29)(A) contained more detailed language than K.S.A. 22-3711, the district court found K.S.A. 22-3711 would have "little, if any, remaining effect" if it enforced the more specific KORA statute. The court adhered to its earlier determination and wrote:

"[Wichita and Eagle and Short] are not entitled to the disclosure of the names of inmates, parolees and/or others supervised by the DOC who have been charged with murder or manslaughter during the period from 1996-1999. The April 10, 2001 Memorandum Decision and Order stated that denial of access was based upon the 'supervision history' privilege of K.S.A. 22-3711. Upon reconsidering this issue, the Court finds that Defendant is still not required to disclose the names, for an alternative reason. As is stated in more detail below, the information is more appropriately available to [Wichita Eagle and Short] through other sources."

Second, the district court found that since it had required that the documents submitted for in-camera review "accurately represent all documents for which [Wichita Eagle and Short] are seeking disclosure," there was no need for it to determine whether other public records existed that would be responsive to the KORA request.

Finally, the district court found the majority of the information requested constituted "supervision history," and, of the information remaining, "there [were] alternative and more appropriate means by which [Wichita Eagle and Short] may obtain this information." The court hinted that arrest records from police and charging documents from district courts could be cross checked for names of individual parolees and that those names then could be used to obtain the requested information from the Department of Corrections.

The district court wrote that the memorandum and order "shall serve as the Order of the Court, no further journal entry being required."

On June 18, 2001, Wichita Eagle and Short timely appeals all adverse judgments, orders, and decrees of the district court, framing three legal challenges. The Secretary of Corrections raises two issues on cross-appeal. The matter is before this court pursuant to a K.S.A. 20-3018(c) transfer.

## I. SUBJECT MATTER JURISDICTION

On cross-appeal, the Secretary of Corrections raises the issue of whether the district court erred in failing to dismiss the mandamus petition for lack of subject matter jurisdiction.

Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 414, 997 P.2d 681 (2000).

"The legislature has provided that each county shall have a district court of record which shall have general original jurisdiction of all matters both civil and criminal, unless otherwise provided by law. K.S.A. 20-301.

". . . Subject matter jurisdiction is the power of the court to hear and decide a particular type of action. [Citation omitted.]" *State v. Hall*, 246 Kan. 728, 757, 793 P.2d 737 (1990).

KORA confers jurisdiction on the district court of any county where public records are situated. "The district court of any county in which public records are located shall have jurisdiction to enforce the purposes of this act with respect to such records, by injunction, mandamus or other appropriate order . . . ." K.S.A. 45-222(a).

The Secretary of Corrections maintains that he consistently denied the district court had jurisdiction because the Department of Corrections does not maintain in its possession a centralized file or record containing a list of identifiable offenders who have been charged with manslaughter.

Wichita Eagle and Short contend that while the Secretary of Corrections now challenges the subject matter jurisdiction based on the alleged location of the public records, this was not argued before the district court below. In addition, they assert there is nothing in KORA requiring a requesting party to prove each document requested from a public agency is located in a particular county. Wichita Eagle and Short maintain that such a requirement would place an impossible burden on requesting parties.

In his motions to dismiss and alternative motions for summary judgment and in his response to Wichita Eagle and Short's motion for summary judgment, the Secretary of Corrections expressly reserved the affirmative defenses of lack of subject matter and personal jurisdiction. However, in his memorandum in support of the motion to dismiss, the Secretary of Corrections made no argument concerning subject matter jurisdiction. Further, the Secretary of Corrections' memorandum supporting his summary judgment motion and response to Wichita Eagle's summary judgment motion contain subject matter jurisdiction arguments based solely on the statutory definition of "public record." The Secretary of Corrections did not contend in any of the motions or memoranda that the records were not located in Shawnee County, the county where the mandamus action was filed.

The district court's February 7, 2001, memorandum decision and order states that the Secretary of Corrections' jurisdictional argument centered on the contention that the requested records were not "public records" within the definition of KORA. There,

the district court found it had jurisdiction in that the documents sought by Wichita Eagle and Short were "public records." The decision contains no mention of any jurisdictional argument by the Secretary of Corrections that a list of offenders charged with manslaughter was not located in Shawnee County.

These facts support Wichita Eagle and Short's contention that the Secretary of Corrections' jurisdiction argument on appeal was not raised or considered below. However, the question of jurisdiction may be raised for the first time on appeal.

"An appellate court has the duty to question jurisdiction on its own initiative. If the record shows a lack of jurisdiction for the appeal, the appeal must be dismissed. [Citation omitted.]" *State v. Snodgrass*, 267 Kan. 185, 196, 979 P.2d 664 (1999). "An objection based on lack of subject matter jurisdiction may be raised at any time, whether it be for the first time on appeal or even upon the appellate court's own motion. [Citation omitted.]" *Rivera v. Cimarron Dairy*, 267 Kan. 865, 868, 988 P.2d 235 (1999).

In *Altevogt v. Youthfriends*, 29 Kan. App. 2d 473, 27 P.3d 947 (2001), Altevogt appealed the dismissal of his action in mandamus after the district court concluded that it did not have jurisdiction under KORA to compel production of documents. Both defendants were Missouri corporations with their offices in Kansas City, Missouri. The records sought by Altevogt were not and had never been maintained in Wyandotte County, Kansas. Despite recognizing that K.S.A. 45-222(a) should be construed liberally, the Court of Appeals stated that the statute "conferr[ed] subject matter jurisdiction only if the public records are located within the county where compliance with the [KORA] is pursued." 29 Kan. App. 2d 473, Syl.

The facts of *Altevogt* differ widely from those here. Here, many of the public records requested by Wichita Eagle and Short were produced by the Department of Corrections from its offices in Shawnee County, Kansas. The Department of Corrections furnished Short with copies of "a considerable volume of documents" prior to suit containing information concerning parolees who were charged and convicted of crimes committed from 1996 through

1999. Therefore, it is apparent that the public records requested were, in fact, located in Shawnee County.

K.S.A. 45-222(a) confers jurisdiction on the district court of any county where public records are situated. We read K.S.A. 45-222(a) to confer subject matter jurisdiction on the district court of a county when a requesting party seeks to compel production of public records if any of the requested public records maintained by the agency are located within the boundaries of that county. We find no provision in KORA requiring a requesting party to prove that each and every requested public record is located within the county in order to establish subject matter jurisdiction. Placing such a burden of proof on the requesting party would create an impracticable and unworkable scheme.

Because many of the records requested here were, in fact, located at the Department of Corrections' offices in Shawnee County, we find that the Shawnee County District Court had proper subject matter jurisdiction over this suit and the Department of Corrections must turn over all nonexempt records located or available in Shawnee County.

## II. K.S.A. 45-221(a)(29)

Wichita Eagle and Short contend that the district court erred in holding that the public records in issue were not subject to disclosure under K.S.A. 45-221(a)(29). We also note that Wichita Eagle and Short have requested this court to conduct an in-camera inspection of the records reviewed by the district court in order to assure a more meaningful review.

At our request, the records were furnished to this court after oral argument. Unfortunately, we do not have comments by the Department of Corrections as to which particular documents should and should not be disclosed, and, of course, the Wichita Eagle and Short have had no opportunity to discuss the records because they have not even seen them. This leaves us in possession of sample records with no indication of the particular privilege claimed or challenged. As a result, they are largely of little use to this court.

"The manner in which a particular exemption under the Act is to be applied is a question of law over which we have unlimited review. The burden of proving the applicability of an exemption is on the public entity opposing disclosure." *Cypress Media, Inc.*, 268 Kan. at 417.

### 1. Remaining public records at issue.

In its second memorandum decision and order, the district court described the public records sought by Wichita Eagle and Short. Part of the requested records or information was given to Wichita Eagle and Short when the district court unsealed answers to interrogatories identifying members of the serious incident review boards from 1996-1999. In addition, the Department of Corrections had previously disclosed a copy of the Kansas Department of Corrections Internal Management Policy and Procedure 12-118, Security and Control: Serious Incident Review Board Actions Pending and Subsequent to Incident Reviews, detailing the purpose of the serious incident review board, how often it meets, and how its members are selected.

The Secretary of Corrections has complied with Wichita Eagle and Short's KORA request for documents which identify the members of serious incident review boards from 1996 through 1999 and documents which discuss the purpose of the serious incident review boards. Therefore, the public records requested by Wichita Eagle and Short that remain at issue are:

(1) documents which identify by name all inmates, parolees and/or others supervised by the Department of Corrections who have been charged with murder or manslaughter during 1996, 1997, 1998, and 1999;

(2) documents containing details regarding the crimes of which these individuals have been accused;

(3) minutes of the meetings of any serious incident review board in which the crimes or alleged crimes of these individuals are discussed; and

(4) notes, decisions, reports, and/or documents reflecting decisions or actions taken by any of the serious incident review boards which have considered the above-referenced crimes and parolees.

We take note that under KORA, a public record is "any recorded information, regardless of form or characteristics, which is made, maintained or kept by or is in the possession of any public agency . . . ." K.S.A. 45-217(f)(1). Thus, any nonexempt document, computer file, or tape recording in the possession of the Department of Corrections is subject to public disclosure under KORA.

2. Supervision history.

The district court found that most of the sample records provided by the Secretary of Corrections for the in-camera review consisted of "supervision history," and stated that the records "contained summaries of contacts with parolees, detailed recording logs of contacts with parolees, and impressions of parole officers that were formed during contacts with parolees." The district court interpreted the term "supervision history" to mean "the record maintained in the supervision of an individual."

Wichita Eagle and Short accept the district court's definition of supervision history as appropriate, but challenge the court's ultimate conclusions. The Secretary of Corrections did not directly cross-appeal the district court's stated definition of supervision history, but argues that this court should defer to the agency's interpretation of that term.

Our search of statutory authority and the Kansas Administrative Regulations reveals no definition for the term "supervision history." In his brief, the Secretary of Corrections does not refer to any agency regulations defining supervision history. We assume that the Secretary of Corrections is referring to the affidavits of Chris Rieger, parole services manager, and himself, offering the following definitions:

"7. In my training and experience, supervision history consists of the parole officer's collected personal observations, sensitive personal information about the offender and third parties, as well as a record of the events, conduct, and circumstances arising during the course of an offender's supervision. Supervision history is KDOC's record of events and details about the conduct and condition over time of an identifiable offender on parole, conditional release, or postrelease supervision. It is the supervising parole officer's documentation of contacts, conversations, observations, investigations, interventions and outcomes concerning a particular

offender. In my experience, supervision history includes details of criminal charges against an identifiable offender which have yet to be adjudicated."

"6. 'Supervision history' is a term of art used by the department to describe the parole officer's collected personal observations, sensitive personal information about the offender and third parties, as well as a record of the events, conduct, and circumstances arising during the course of an offender's supervision. 'Supervision history' is KDOC's record of events and details about the conduct and condition over time of an identifiable offender on parole, conditional release, or postrelease supervision which is required to be kept by statute. It is the supervising parole officer's documentation of contacts, conversations, observations, investigations, interventions and outcomes concerning a particular offender. In my experience, 'supervision history' includes information of criminal charges or investigations involving or allegedly involving [sic] against an identifiable offender which have yet to be adjudicated."

"Although an appellate court gives deference to the agency's interpretation of a statute, the final construction of a statute lies with the appellate court, and the agency's interpretation, while persuasive, is not binding on the court. Interpretation of a statute is a question of law over which an appellate court's review is unlimited." *CPI Qualified Plan Consultants, Inc., Delaware v. Kansas Dept. of Human Resources*, 272 Kan. 1288, Syl. ¶ 3, 38 P.3d 666 (2002).

## K.S.A. 22-3711 states:

"The presentence report, the preparole report, the pre-postrelease supervision report and the supervision history, *obtained* in the discharge of official duty by any member or employee of the Kansas parole board or any employee of the department of corrections, shall be privileged and shall not be disclosed directly or indirectly to anyone other than the parole board, the judge, the attorney general or others entitled to receive the information, except that the parole board, secretary of corrections or court may permit the inspection of the report or parts of it by the defendant, inmate, defendant's or inmate's attorney or other person having a proper interest in it, whenever the best interest or welfare of a particular defendant or inmate makes the action desirable or helpful." (Emphasis added.)

Because the statute refers to the supervision history as something that is "obtained" by a member or employee of the Kansas Parole Board or Department of Corrections, we believe the correct interpretation of "supervision history" refers to personal notes of the parole officer and excludes those records generated by other members or employees of the parole board or Department of Corrections. Furthermore, even though both affidavits attempt to include criminal charges filed but not yet adjudicated within the definition of supervision history, the inclusion of pending criminal

charges would blur any distinction between supervision history and criminal investigation records or court records. See K.S.A. 45-217(b) (excluding court records from the definition of "criminal investigation records"). Criminal charges are generally filed in a complaint, which is a public record.

Although K.S.A. 22-4707 restricts the dissemination of criminal history record information and certain arrest records, a public agency may disclose court records, information concerning an arrest, or the status of a pending investigation. See *Stephens v. Van Arsdale*, 227 Kan. 676, 684-85, 608 P.2d 972 (1980); Att'y Gen. Op. No. 98-38.

"Notwithstanding the provisions of the preceding section, a criminal justice agency may disclose the status of a pending investigation of a named person or the status of a pending proceeding in the criminal justice system, if the request for information is reasonably contemporaneous with the event to which the information relates and the disclosure is otherwise appropriate." K.S.A. 22-4708.

Therefore, we find that the term "supervision history" in K.S.A. 22-3711 means the supervising parole officer's documentation of collected personal observations, sensitive personal information about the offender and third parties, contacts, conversations, observations, investigations, and interventions concerning a particular offender. Information concerning pending criminal charges filed against an individual not yet adjudicated is not included in the term supervision history.

Although the district court stated that most of the sample records provided by the Secretary of Corrections for the in-camera review consisted of supervision history, based on our definition of that statutory term and based the other findings of the district court, we conclude that the Department of Corrections maintains records other than supervision history that would be responsive to Wichita Eagle and Short's KORA request.

The district court found that the Department of Corrections "maintains a number of files, forms, records, and instruments relative to post-incarceration supervision of offenders in the custody of the Secretary of Corrections. One of these is the parole supervision file." Our review of the list of documents found by the district court to be contained in the parole supervision file convinces

us that the Department of Corrections is in the possession of public records falling outside our definition of supervision history.

In addition, in its initial correspondence to Wichita Eagle and Short, the Department of Corrections admitted that it maintained many of the public records requested, but stated and reiterated that Wichita Eagle and Short would only be entitled to the information if the requests were submitted using the specific names of inmates or parolees. This is a strong indicator that responsive documents are maintained by the Department of Corrections. Significantly, we find no legal authority supporting the Department of Corrections' assertion that KORA requests must be made using the specific names of individuals.

For the reasons discussed, the district court erred in determining that no records maintained by the Department of Corrections would be responsive to Wichita Eagle and Short's KORA request.

3. District court's findings of exemptions, privileges, and policy.

The district court determined that the Department of Correction's supervision history records were privileged pursuant to K.S.A. 22-3711 and K.S.A. 45-221(a)(20), and that the work product doctrine of K.S.A. 2001 Supp. 60-226(b)(3) provided a privilege for documents and tangible things prepared in anticipation of litigation. In addition, the district court found that production of the records would be contrary to the public policy encouraging self-critical analysis. The district court stated that redaction of the remaining information by the Secretary of Corrections would leave little to be disclosed and that Wichita Eagle and Short could glean the remaining information from alternate and more appropriate sources. We will consider each of these privileges in turn.

4. K.S.A. 22-3711 and K.S.A. 45-221(a)(29).

Wichita Eagle and Short contend that the district court erred in holding that the public records in issue were not subject to disclosure under K.S.A. 45-221(a)(29), a provision of KORA. The district court's decision to grant partial summary judgment to the Secretary of Corrections appears to be predicated on its legal interpretation of various statutes.

" 'Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought.' " *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000) (quoting *Bergstrom v. Noah*, 266 Kan. 847, 871-72, 974 P.2d 531 [1999]).

The essential facts of this case are not disputed by the parties. Wichita Eagle and Short challenge the district court's legal interpretation of KORA and other statutes, however.

"It is a fundamental rule of statutory constructions, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. [Citation omitted.] The legislature is presumed to have expressed its intent through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.] Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. [Citation omitted.]" *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

### The provisions of KORA are found in K.S.A. 45-215 *et seq.*

"[KORA] was originally enacted in 1983 to be effective January 1, 1984. See K.S.A. 1983 Supp. 45-205 *et seq.* However, due to a technical error in its enactment, the act was repealed and the sections reenacted, effective February 9, 1984. See K.S.A. 45-215 *et seq.*

"The KORA represented a significant departure from the previous law, the Kansas Public Records Inspection Act (KPRIA), K.S.A. 45-201 through 204 (Ensley 1981) (repealed 1983). [Citation omitted.] The old law mandated that only those records 'required to be kept and maintained' by a specific statute be open for inspection for the public. K.S.A. 45-201(a) (Ensley 1981). Since specific statutes required only a small number of records be kept and maintained, only a small number had to be open to public scrutiny. [Citation omitted.] The KORA, on the other hand, declares it to be the public policy of this state that public records *shall be open for inspection by any person unless otherwise provided* by the act. K.S.A. 45-216. 'Public record' is defined to mean 'any recorded information, regardless of form or characteristics, which is made, maintained or kept by or is in the possession of any public agency.' K.S.A. 45-217(f)(1). The act further provides that it should be liberally construed and applied to promote the stated public policy.

"K.S.A. 45-221(a) sets out in some detail thirty-five categories of records which public agencies are not *required* to disclose. Thus, the act does not prohibit disclosure of records contained within these exceptions, but rather makes their release discretionary with the official records custodian." (Emphasis added.) *Harris Enterprises, Inc. v. Moore*, 241 Kan. 59, 63-64, 734 P.2d 1083 (1987).

" 'The public policy stated in KORA is that all records are "open for inspection by any person unless otherwise provided by this act." ' " *Cypress Media, Inc.*, 268 Kan. at 416. By statutory decree, we are to liberally construe and apply KORA to promote a policy of open inspection of public records.

Our analysis of the district court's decision begins with a review of the pertinent categories of records listed in KORA that may be, but are not required to be, released at the discretion of the records custodian. First, a public agency is not required to release

"[r]ecords the disclosure of which is specifically prohibited or restricted by federal law, state statute or rule of the Kansas supreme court or the disclosure of which is prohibited or restricted pursuant to specific authorization of federal law, state statute or rule of the Kansas supreme court to restrict or prohibit disclosure." K.S.A. 45-221(a)(1).

Under KORA, a public agency may, but is not required to release

"[c]orrectional records pertaining to an identifiable inmate or release, except that:

"(A) The name; photograph and other identifying information; sentence data; parole eligibility date; custody or supervision level; disciplinary record; *supervision violations; conditions of supervision*; excluding requirements pertaining to mental health or substance abuse counseling; location of facility where incarcerated or location of parole office maintaining supervision and address of a releasee whose crime was committed after the effective date of this act *shall be subject to disclosure to any person* other than another inmate or releasee . . . ." (Emphasis added.) K.S.A. 45-221(a)(29).

As discussed above, K.S.A. 22-3711 mandates that members and employees of the parole board and Department of Corrections shall not disclose "[t]he presentence report, the preparole report, the pre-postrelease supervision report and *the supervision history* . . . ." (Emphasis added.)

The district court found a "direct conflict" between K.S.A. 45-221(a)(29) and K.S.A. 22-3711. Applying the definition of super-

vision history discussed above, however, it is possible to harmonize the two statutes.

While K.S.A. 45-221(a)(29) mandates that a releasee's "name; photograph and other identifying information; sentence data; parole eligibility date; custody or supervision level; disciplinary record; supervision violations; conditions of supervision . . .; location of facility where incarcerated or location of parole office maintaining supervision and address . . . shall be subject to disclosure," K.S.A. 22-3711 restricts disclosure of the supervising parole officer's personal observations, sensitive personal information about the offender and third parties, contacts, conversations, observations, investigations, and interventions concerning a particular offender. Information concerning pending criminal charges filed against a supervised individual is subject to disclosure, while information concerning parole requirements for mental health or substance abuse counseling is not subject to disclosure.

### 5. K.S.A. 45-221(a)(20).

Next, we consider the district court's determination that "the notes and recommendations that were formulated by the serious incident review board [were] not discoverable under KORA," pursuant to K.S.A. 45-221(a)(20). Under K.S.A. 45-221(a)(20), a public agency may, but is not required to, release

"[n]otes, preliminary drafts, research data in the process of analysis, unfunded grant proposals, memoranda, recommendations or other records in which opinions are expressed or policies or actions are proposed, except that this exemption shall not apply when such records are publicly cited or identified in an open meeting or in an agenda of an open meeting." K.S.A. 45-221(a)(20).

This KORA exemption is self-explanatory. Department of Correction records expressing opinions or containing proposed policies or actions need not be disclosed, unless such records have been publicly cited or identified in an open meeting or an agenda of an open meeting.

Here, Wichita Eagle and Short requested access to minutes of the meetings of serious incident review boards discussing the crimes or alleged crimes of supervised individuals and records reflecting decisions or actions taken by any of the serious incident

review boards in regard to murders and manslaughters committed by parolees from 1996 through 1999. Significantly, Wichita Eagle and Short are not seeking access to records of proposed policies or actions, but rather are seeking access to records reflecting decisions or actions already taken by the serious incident review boards. K.S.A. 45-221(a)(20) exempts records where "policies or actions are proposed." The exemption does not extend to records on policies currently in place or actions already taken.

Under K.S.A. 45-221(a)(20), any of the Department of Corrections records consisting of opinions are exempt from disclosure. The record on appeal does not indicate whether any of the requested records to which this KORA exemption might apply were "publicly cited or identified in an open meeting or in an agenda of an open meeting." If so, the exemption does not apply, and the records should be disclosed.

6. Work product doctrine and K.S.A. 45-221(a)(25).

The district court found that K.S.A. 45-221(a)(25) and the work product doctrine codified in K.S.A. 2001 Supp. 60-226(b) would operate to exempt "at least some" of the records kept by the Department of Corrections from mandatory disclosure. The court found that at least one of the documents it had reviewed in camera contained language supporting the application of the work product doctrine.

Under K.S.A. 45-221(a)(25), a public agency may, but need not, produce "[r]ecords which represent and constitute the work product of an attorney."

The document in question stated:

"THIS CONFIDENTIAL REPORT HAS BEEN PREPARED UNDER THE DIRECTION AND SUPERVISION OF THE CHIEF LEGAL COUNSEL OR DESIGNEE. THIS SERIOUS INCIDENT REVIEW HAD BEEN CONDUCTED AND PREPARED FOR THE PURPOSE OF ASSISTING THE CHIEF LEGAL COUNSEL IN PROVIDING LEGAL ADVICE TO THE SECRETARY OF CORRECTIONS. THE REPORT IS INTENDED TO REMAIN STRICTLY CONFIDENTIAL PURSUANT TO A SELF-CRITICAL ANALYSIS PRIVILEGE, IN ANTICIPATION OF LITIGATION, AND UNDER A STRONG PUBLIC POLICY INTEREST IN FREE FLOW OF CONSTRUCTIVE SELF-CRITICISM AND CRITICAL SELF-ANALYSIS . . . ."

We presume that the report in question was not prepared by an attorney, but rather was prepared at the request of the chief legal counsel for the Department of Corrections or legal counsel's designee. If the document was prepared in anticipation of litigation, the district court correctly concluded that the report need not be disclosed under the KORA exemption found in K.S.A. 45-221(a)(25).

Under K.S.A. 45-221(a)(2), "if the records are privileged under rules of evidence and not consented to by the holder of that privilege, disclosure is not required." *Cypress Media, Inc.*, 268 Kan. at 417. Except where a court has ordered otherwise, the work product doctrine provides that "a party shall not require a deponent to produce, or submit for inspection, any writing prepared by, or under the supervision of, an attorney in preparation for trial." K.S.A. 2001 Supp. 60-226(b)(1).

The work product rule is not an absolute privilege but rather is a limitation on discovery. *Alseike v. Miller*, 196 Kan. 547, 557, 412 P.2d 1007 (1966). The work product limitation on discovery may be overcome by a showing of undue hardship. K.S.A. 2001 Supp. 60-226(b)(1).

" '[K.S.A. 60-226(b)] is a codification of the attorney work product limitation on discovery first recognized judicially in *Hickman v. Taylor*, 329 U.S. 495, 91 L. Ed. 451, 67 S. Ct. 385 (1947). It limits discovery of documents and tangible things prepared in anticipation of litigation or for trial. It extends the original work product limitation to documents and tangible things prepared by or for a party's representative, including not only lawyers but insurers, agents and others. However, such material can be discovered on a showing that the party seeking discovery has a substantial need for the material and cannot without undue hardship obtain the substantial equivalent by other means.' " *Cypress Media, Inc.*, 268 Kan. at 426 (quoting 1 Gard and Casad, Kansas C. Civ. Proc. Annot. § 60-226, pp. 187-88 [3d ed. 1997]).

"[W]ork product immunity rests on the idea it is necessary to preserve the independence of the lawyer and thus, indirectly, the adversary system." *Alseike*, 196 Kan. at 558.

"The policy basis for the work product rule is the need for the lawyer handling a case to have full rein to develop his theory and strategy in the case if the adversary system is to work effectively. To perform this role the lawyer needs to be able to work without fear of disclosure, at least in the earlier stages of preparation. And he needs protection from the possibility that he will be cast in the role of a

witness and, even worse, of a witness antagonistic to other witnesses upon whose testimony his client's case may depend. [Citation omitted.]" 196 Kan. at 557.

In its memorandum decision and order of April 10, 2001, the district court appears to broadly characterize several of the reports requested by Wichita Eagle and Short as work product materials "prepared in the anticipation of litigation." This deserves some comment.

In *Schmidt v. HTG, Inc.*, 265 Kan. 372, 961 P.2d 677, *cert. denied* 525 U.S. 964 (1998), this court found that the discretionary function exception to the Kansas Tort Claims Act applied to protect a parole officer from liability for the criminal acts of a parolee. 265 Kan. at 393. In addition, this court observed that a State actor may not generally be held liable for private misdeeds in a 42 U.S.C. § 1983 (1994) action. 265 Kan. 372, Syl. ¶ 1. There, this court wrote:

"A parole officer does not take charge or exercise control over a parolee so as to create a special relationship between the officer and the parolee, thereby imposing a duty upon the State to control the conduct of the parolee to prevent harm to other persons or property. The State is not the virtual guarantor of the safety of each and every one of its citizens from illegal and unlawful actions of every parolee or person released from custody under any type or kind of supervision." 265 Kan. 372, Syl. ¶ 6.

Because there are few, if any, causes of action that may be entertained successfully against parole officers and the Department of Corrections, the assertion that the document in question was "prepared in anticipation of litigation" appears to lack conviction or certainty.

"The Kansas Open Records Act . . . does not allow an agency unregulated discretionary power to refuse to release information sought by the public. The stated policy of the Act is that all public records are to be open to the public for inspection unless otherwise provided in the Act." *State Dept. of SRS v. Public Employee Relations Board*, 249 Kan. 163, Syl. ¶ 3, 815 P.2d 66 (1991).

While documents prepared specifically at the request or direction of legal counsel in anticipation of litigation need not be disclosed under the KORA exemption found in K.S.A. 45-221(a)(25), the subjective decision to mark records as "prepared in anticipation of civil litigation" should not by itself imbue the records with the

protection of this privilege when, in reality, there is no likelihood that litigation will ensue.

The attorney work product doctrine does not offer a per se exemption for all records prepared by or for an attorney. See *Cypress Media, Inc.*, 268 Kan. at 427; *Alseike*, 196 Kan. at 558. The work product doctrine only applies to those documents and tangible things prepared in anticipation of litigation, and in order for the discovery limitation to apply, there must be a substantial probability that litigation will ensue. See *In re Grand Jury Investigation*, 599 F.2d 1224, 1229 (3d. Cir. 1979); *Home Insurance Co. v. Ballenger Corp.*, 74 F.R.D. 93, 101 (N.D. Ga. 1977). " 'Certainly by implication the . . . rule precludes any idea of extending the work product doctrine to reports or statements, even if written, obtained by the client or his investigators which are not prepared "under the supervision of an attorney in preparation for trial." [Citation omitted.]' " *Alseike*, 196 Kan. at 558.

"Privileges in the law are not favored because they operate to deny the factfinder access to relevant information." *Adams v. St. Francis Regional Med. Center*, 264 Kan. 144, Syl. ¶ 3, 955 P.2d 1169 (1998). We hold that under KORA, where litigation would not reasonably be anticipated under an objective standard, the work product doctrine should not act as a bar to the production of public records.

### 7. Public policy.

In addition to the other reasons cited for denying access to the records, the district court found that a strong public policy reason existed for denying disclosure of the requested records. The district court went on to state that disclosure of the information would discourage the Department of Corrections from conducting self-critical evaluation.

Wichita Eagle and Short submit on appeal that it is in the public interest to disclose the requested public records and assert that they "have an interest in what the DOC has concluded in terms of its supervision of the murderers while they were on parole and what, if anything, it is doing or has done to guard against similar occurrences in the future." Wichita Eagle and Short contend that

"the so-called privilege of 'self-critical analysis' (see *e.g.*, *Kansas Gas & Electric v. Eye*, 246 Kan. 419, 425-27, 789 P.2d 1161 [1990]) appears to have influenced the court in its decision, at least with respect to certain records."

While we agree that a policy encouraging self-evaluation by the Department of Corrections would be in the public interest, we must balance this interest against the strong public policy set forth by the legislature in KORA. KORA declares that the public policy of this state is "that public records shall be open for inspection by any person unless otherwise provided by this act." K.S.A. 45-216.

We hold that the public policy recognized by the district court favoring self-analysis and improvement by the Department of Corrections is outweighed in this instance by the public policy set forth by the legislature in KORA. The district court erred in holding otherwise.

## III. RECORDS AVAILABLE FROM ALTERNATE SOURCES

Next we consider Wichita Eagle and Short's contention that the district court committed clear error by finding that the public records requested were "more appropriately available through other sources."

"Determining whether the district court correctly applied the KORA is a question of law, involving an interpretation of the statute; therefore, this court's review of the district court's interpretation is plenary." *Seck v. City of Overland Park*, 29 Kan. App. 2d 256, 258, 27 P.3d 919, 922 (2000) (citing *Burroughs v. Thomas*, 23 Kan. App. 2d 769, 770-71, 937 P.2d 12, *rev. denied* 262 Kan. 959 [1997]).

Wichita Eagle and Short assert that there is no authority supporting the proposition that a court may decide where requesting parties under KORA should go for information; instead, they maintain that courts must simply enforce the Act. In short, they believe KORA litigation should exclude any analysis of where it is appropriate for a requesting party to turn for information.

In a recent case concerning a KORA request for coroner's records, our Court of Appeals observed that in ruling which public records are exempt from disclosure, "[c]ourts may only apply and

enforce legislation." *Burroughs*, 23 Kan. App. 2d at 773 (citing *Kansas Human Rights Comm'n v. Topeka Golf Ass'n*, 18 Kan. App. 2d 581, 593, 856 P.2d 515 [1993], *aff'd* 254 Kan. 767, 869 P.2d 631 [1994]).

K.S.A. 45-218(e) provides that a records custodian

"may refuse to provide access to a public record, or to permit inspection, if a request places an unreasonable burden in producing public records or if the custodian has reason to believe that repeated requests are intended to disrupt other essential functions of the public agency. However, refusal under this subsection must be sustained by preponderance of the evidence."

Here, the Secretary of Corrections has made no claim of a right to refuse to provide access under K.S.A. 45-218(e).

Another provision of KORA states that "[n]o request shall be returned, delayed or denied because of any technicality unless it is impossible to determine the records to which the requester desires access." K.S.A. 45-220. Again, no such claim has been made by the Secretary of Corrections.

The Kansas Rules of Civil Procedure allow a court to limit discovery methods of parties to litigation where "[t]he discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome or less expensive." K.S.A. 2001 Supp. 60-226(b)(2)(A). As discussed above, KORA provides that "[r]ecords which are privileged under rules of evidence [need not be disclosed], unless the holder of the privilege consents to the disclosure." K.S.A. 45-221(a)(2).

However, K.S.A. 2001 Supp. 60-226(b)(2)(A) does not codify a privilege; rather it allows a district court to limit the frequency and extent of discovery methods employed by parties to litigation. Therefore, because this provision is a limitation on civil discovery, not a privilege that may be invoked, it cannot be incorporated into the exemption for privileged records under K.S.A. 45-221(a)(2).

We find no other provision or exemption in KORA allowing a public agency to refuse to produce records because such records are available from another or a more "appropriate" source. We find, therefore, that the district court erred in concluding that the Secretary of Corrections need not produce the public records requested because they were available through other sources.

## IV. REDACTED RECORDS

Next, Wichita Eagle and Short challenge the district court's conclusion that the Secretary of Corrections need not furnish redacted copies of the requested public records.

The district court's decision involved the interpretation and application of K.S.A. 45-221(d), the KORA provision directing public agencies to furnish redacted records under certain circumstances. "Interpretation of a statute is a question of law in which appellate review is unlimited." *In re Marriage of Phillips*, 272 Kan. 202, Syl. ¶ 1, 32 P.3d 1128 (2001).

K.S.A. 45-221(d) states, in pertinent part: "If a public record contains material which is not subject to disclosure pursuant to this act, the public agency shall separate or delete such material and make available to the requester that material in the public record which is subject to disclosure pursuant to this act."

Wichita Eagle and Short assert that it is inappropriate for a district court to fail to require a public agency to furnish redacted records because of its perception of inconvenience to the agency that redaction would cause. In support of their position, Wichita Eagle and Short cite *Cypress Media*, 268 Kan. at 425, which is not directly on point. There, this court held that parties claiming the attorney-client privilege in billing statements bear the burden of establishing that it applies. Wichita Eagle and Short maintain that "*Cypress Media* stands for the proposition that the court cannot simply take counsel at their word as to the nature of the requested public records."

Here, the district court stated: "Redaction of the information exempt from disclosure under KORA would leave little to be disclosed to Plaintiffs. Of the information left to be disclosed, . . . there are alternative and more appropriate means by which Plaintiffs may obtain this information."

We find the language of the KORA provision clear and unequivocal. It mandates that a public agency "*shall* separate or delete such material and *make available* to the requester that material in the public record which is subject to disclosure pursuant to this act." (Emphasis added.) K.S.A. 45-221(d). It is the duty of a public

agency to make available records containing material disclosure. See Att'y Gen. Op. No. 98-38 ("It is important to remember that under the KORA if a document contains some material which is not subject to disclosure and some material that is subject to disclosure, a public agency is under a duty to make available that material which is subject to disclosure."). Therefore, we hold that the district court erred in concluding that the Department of Corrections need not furnish redacted records.

## V. MOTION FOR SUMMARY JUDGMENT

On cross-appeal, the Secretary of Corrections contends that the district court erred in failing to grant summary judgment on Wichita Eagle and Short's claims in their entirety.

"Under both K.S.A. 60-2103(h) and its predecessor, G.S. 1949, 60-3314, it has been held that a cross-appellee may obtain a review of all rulings adverse to him, interlocutory or otherwise, when such rulings may on remand affect the subsequent course of the proceedings. It is, of course, necessary that a cross-appeal be perfected in order for an appellee to obtain a review of such rulings. [Citations omitted.]" *Vaughn v. Murray*, 214 Kan. 456, 462, 521 P.2d 262 (1974).

See also *Grimmett v. S & W Auto Sales Co.*, 26 Kan. App. 2d 483, 484, 988 P.2d 755 (1999) ("A denial of a motion for summary judgment may be reviewed on appeal when asserted as a cross-appeal. See K.S.A. 60-2103(h).").

Here the Secretary of Corrections cross-appealed any and all orders, judgments, and decrees adverse to him. In his brief, the Secretary of Corrections asserts that the district court erred when it failed to consider the effect of Wichita Eagle and Short's failure to: (1) rebut or controvert the Secretary of Correction's definition of supervision history; (2) establish that all the requested records were located in Shawnee County, Kansas; or (3) establish that the language used in K.S.A. 22-3711 would not preclude production of redacted copies of records. The Secretary of Corrections argues that under K.S.A. 2001 Supp. 60-256(e), Wichita Eagle and Short's failure to respond with specific factual support for their claims should have resulted in a grant of summary judgment in his favor.

K.S.A. 2001 Supp. 60-256(e) states, in pertinent part:

"When a motion for summary judgment is made and supported . . . [with affidavits made on personal knowledge], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this section must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

We note, however, that the district court need not grant summary judgment unless "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." *Mitchell v. City of Wichita*, 270 Kan. 56, 59, 12 P.3d 402 (2000).

Wichita Eagle and Short point out that the district court decided one issue adversely to the Secretary of Corrections, ordering the interrogatory answers to be unsealed, revealing the identities of the members of serious incident review boards. Wichita Eagle and Short contend that the district court could not possibly grant the Secretary of Corrections' motion for summary judgment in its entirety and believe it is unnecessary for this court to address the issues in the Secretary of Corrections' brief on cross-appeal.

We agree. The issue of the district court's order in regard to the interrogatory answers is not challenged in the Secretary of Corrections' brief. "Where a cross-appellant fails to brief an issue, that issue is deemed waived or abandoned. (Citation omitted.)" *Beltz v. Dings*, 27 Kan. App. 2d 507, 517, 6 P.3d 424 (2000). The questions raised in the Secretary of Corrections' brief are related to issues in the parties' motions for summary judgment that were ultimately decided in favor of the Secretary of Corrections and are, therefore, not properly before this court.

Regardless, the three points argued by the Secretary of Corrections' cross-appeal all involve the legal interpretation of the KORA and other statutes. We have discussed the legal issues concerning the interpretation of supervision history, the location of the records, and the statute directing the production of redacted public records.

We conclude that the district court did not err when it denied the Secretary of Corrections' motion for summary judgment in its entirety.

Reversed and remanded with instructions to grant an order in mandamus consistent with this opinion.