No. 92,596

DATA TREE, LLC, *Appellant*, v. BILL MEEK, SEDGWICK COUNTY
REGISTER OF DEEDS, *Appellee*.

109 P.3d 1226

Opinion filed April 22, 2005.

*Michael W. Merriam,* of Topeka, argued the cause and was on the brief for appellant.

*Ed L. Randels,* assistant county counselor, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: The issue we must decide today involves a question of first impression under the provisions of the Kansas Open Records Act (KORA), K.S.A. 45-215 *et seq.* Data Tree, LLC (Data Tree) filed suit to obtain bulk records contained in 20 separate rolls of microfilm because the Sedgwick County Register of Deeds was exacting redaction fees to eliminate social security numbers, mother's maiden names, and dates of births from the documents requested. Data Tree appeals from summary judgment granted in favor of the Sedgwick County Register of Deeds and the denial of Data Tree's requested attorney fees. Our jurisdiction is based upon K.S.A. 20-3018(c).

Data Tree is a subsidiary of First American Corporation, which purports to be the nation's leading provider of business information by supplying businesses and consumers with the information and resources that affect the major economic events of peoples' lives such as getting a job; renting an apartment; buying a car, house, boat, or airplane; securing a mortgage; opening or buying a business; and planning for retirement. First American has nearly 25,000 employees in the United States and abroad. In 2002, it had revenues of $4.7 billion.

Data Tree is engaged in the business of collecting and providing real estate information and, in the course of such business, gathers and disseminates facts obtained from public records to its clients. Data Tree's business is conducted in part by purchasing copies of public records maintained by various register of deeds' offices in the State of Kansas, including Sedgwick County.

Bill Meek is the duly elected Sedgwick County Register of Deeds (Register of Deeds). The Register of Deeds' office maintains the following types of recorded documents: Uniform Com-

mercial Code (UCC) filings including UCC releases or satisfactions; birth and death certificates; military discharges; federal and state tax liens and tax lien releases or satisfactions; mortgages and mortgage releases or satisfactions; various judgments or liens and releases or satisfactions thereof; various deeds, plats, and indexes; miscellaneous notices and affidavits; affidavits of equitable interests; bankruptcy, probate, and miscellaneous court documents; powers of attorney; and refiled, corrected documents. Many of these documents are likely to contain social security numbers, mothers' maiden names, and dates of births.

In March 2001, Data Tree asked for and received copies of microfilm records from Microfilm Services, Inc. (Microfilm), a local vendor who created microfilm copies of the public records maintained by the Register of Deeds for the period of January 1990 until February 2001. On April 10, 2001, Microfilm informed both Data Tree and the Register of Deeds of the costs involved in providing the records. The total cost for 1,035 microfilm rolls was $13,237.50 or $12.50 per roll plus other fees. No redaction fees were mentioned in this letter.

In March 2000 and at an undetermined time in 2001, one or more persons complained to the Register of Deeds about being solicited for commercial purposes based on information from the public records held by the Register of Deeds. This information was turned over to the district attorney, and an investigation was conducted. As a result of the investigation, it was suggested, although it may have been factually inaccurate, that another subsidiary of First American was selling or providing copies of the documents on microfilm to other entities and that one of the other entities was using the data to solicit sales.

In December 2002, First American again requested all recorded documents from a certain time period in 2001, with the exception of birth records, marriage certificates, and military discharges. In a January 14, 2003, letter, First American Real Estate Solutions general counsel responded to the Register of Deeds' requirement that First American execute an affidavit prohibiting the selling or offering for sale any lists of names and addresses derived from public records. See K.S.A. 2004 Supp. 45-230. First American ar-

gued it should not be required to sign such an affidavit, citing Kansas Attorney General Opinion No. 89-47, K.S.A. 21-3914 (now repealed; L. 2003, ch. 126, sec. 5), and K.S.A. 45-215. In a January 17, 2003, letter, the assistant county counselor, for the Register of Deeds, responded that the affidavit requirement would not be waived.

In a March 24, 2003, letter, First American submitted an executed affidavit on behalf of Data Tree and request for the following records: "The following ranges for 2001 on film or CD [identified as] 1960138-1963532 [and] 1967128-193738." This request included all recorded instruments from March 9, 2001, to April 10, 2001, and from April 24, 2001, to May 14, 2001. These records were contained on 20 separate rolls of microfilm.

In an April 22, 2003, letter, the Register of Deeds informed the contracts administrator of First American Real Estate Solutions that many of the requested records contained personally identifying information such as social security numbers, mothers' maiden names, and dates of births which needed to be redacted from the records. The Register of Deeds advised First American that it would have to pay the costs for converting the microfilm to digital information in order to remove or redact the portions that were confidential and not subject to release pursuant to the KORA. The Register of Deeds does not have the capability of converting the microfilm requested and employs an outside firm to accomplish the conversions and redactions. The estimated costs for this process plus the Register of Deed's $50 fee were $22,050.

First American asked that the redaction fees be reconsidered. The assistant county counselor once again explained that the requested records contained a great deal of personal information, not subject to disclosure, citing two provisions of the KORA; see K.S.A. 2004 Supp. 45-221(a)(30), which provides an exception for information that "would constitute a clearly unwarranted invasion of privacy" and K.S.A. 2004 Supp. 45-221(d), which requires a public agency to separate or delete such personal information prior to providing any requested records subject to disclosure. This May 8, 2003, letter explained that the Register of Deeds did not have the capacity to redact the information from the microfilm without

printing out each document and redacting the material by hand which would cost more than the estimate previously provided and suggested that First American contact the outside company personally and attempt to negotiate a better deal.

Counsel for Data Tree and First American responded expressing the history of the dispute and his legal opinion. Counsel for the Register of Deeds responded with further legal analysis, concluding that the records would not be delivered without redaction.

In 2003, the Register of Deeds changed its policy and no longer provided copies of documents without redaction of personal or private information to anyone without an agreement as to the use and reproduction of said documents. The Register of Deeds has entered into agreements with title companies, licensed abstractors, attorneys, banks, and mortgage companies to furnish records without the redaction of social security numbers, mothers' maiden names, and dates of births, provided that such entities agree concerning the reproduction of personal information from said documents and indemnifying the Register of Deeds from liability for any misuse. This information has been provided because those entities generally already have the personal identifying information of the parties to the transaction and there has been a tacit waiver by the parties to this information. On July 17, 2003, the Register of Deeds sent Microfilm a letter directing that copies of such documents were not to be provided to outside entities without redaction unless approved by the Register of Deeds.

On October 8, 2003, Data Tree filed its action against the Register of Deeds claiming a violation of the KORA, K.S.A. 45-215 *et seq.*, and seeking a declaratory judgment that (1) the Register of Deed's actions were contrary to law and the duties of its office; (2) the requested documents were public records which must be disclosed and copied at a reasonable charge; and (3) alternatively, the Register of Deeds must bear the costs of deleting the personal information. Data Tree prayed for an order enjoining the Register of Deeds from any further violations of the KORA and for an order in mandamus compelling the Register of Deeds to comply with the law and Data Tree's requests for such public records now and in the future.

The Register of Deeds filed a motion for summary judgment. Data Tree then filed a motion for summary judgment and a request for a hearing on attorney fees. After a hearing, the district court granted the Register of Deed's motion of summary judgment, denied Data Tree's motion for summary judgment and request for attorney fees, and dismissed Data Tree's complaint, reasoning:

"1. It is the intent of the legislature pursuant to K.S.A. 45-216 that records be open for inspection by any person unless otherwise provided by the provisions of the Kansas Open Records Act (KORA), and that the provisions of said act shall be liberally construed and applied to promote such policy.

"2. The legislature clearly created certain exemptions which are primarily set out in K.S.A. 2003 Supp. 45-221. Said exemptions must be given meaning or anything held by the government would be open.

"3. [The Register of Deeds] has an obligation to preserve the records and to comply with the provisions of K.S.A. 2003 Supp. 45-230.

"4. The records sought by [Data Tree] are subject to the open records provisions of the Kansas Open Records Act, but sensitive information may be redacted before distribution to the public. The protection of private information including social security numbers, dates of birth[s] and mothers' maiden names is clearly within the purview of the provisions of K.S.A. 2003 Supp. 45-221(a)(30).

"5. The change in position taken by the [Register of Deeds] in 2003 as to the need for redaction was not made in bad faith and was taken during the ordinary course of his duties. No attorneys fees are to be awarded.

"6. Pursuant to K.S.A. 45-219, all costs of producing records including the cost of redaction are to be borne by [Data Tree] as the requestor—which is similar to litigation costs where the party requesting the records is responsible for the cost of production.

"7. [Data Tree] is entitled to copies of the records requested, subject to one of two options set forth below:

A. [Data Tree] may obtain bulk copies, at cost, of the microfilm provided a duly authorized representative of [Data Tree] enter[s] into the standard agreement with [the Register of Deeds] as to the use and reproduction of said records and providing for the redaction of social security numbers, mothers' maiden names, and dates of birth[s]; or

B. [Data Tree] may, upon payment of the full estimated cost of producing the records including the cost of redaction, obtain copies of the records requested with the social security numbers, mothers' maiden names, and dates of birth[s] redacted."

Data Tree raises the following issues in this appeal: (1) The Register of Deeds has no authority to redact recorded instruments; (2)

K.S.A. 2004 Supp. 45-221(a)(30) does not apply to the Register of Deeds and is no basis for denial of access to copies of public records; (3) if redaction is required, the cost must be borne by the Register of Deeds; and (4) Data Tree is entitled to attorney fees for denial of access.

**(1) Authority to Redact**

Data Tree contends the Register of Deeds has no discretion to deny access to any recorded instruments based on the exception to disclosure in K.S.A. 2004 Supp. 45-221(a)(30) because the sole purpose of a register of deeds is to place voluntarily submitted documents on the public record for the purpose of imparting notice to the public of their contents. The Register of Deeds does not dispute that the purpose of his office is to put the public on notice of instruments submitted for recording; however, in most cases, information such as social security numbers, mothers' maiden names, and dates of births are not mandated by law or the policy of the Register of Deeds. According to the Register of Deeds, there is nothing in the provisions of the KORA to suggest that K.S.A. 2004 Supp. 45-221(a)(30) applies only to certain public records.

Data Tree further argues the duties of a register of deeds to "record" equate with imparting notice, which is meaningless if a register of deeds has discretion concerning which parts of recorded documents serve to put the public on notice of their contents. K.S.A. 19-1204(a) states:

"The register of deeds shall have custody of and safely keep and preserve all the books, records, deeds, maps, papers and microphotographs deposited or kept in the office of the register of deeds. The register of deeds shall also record, or cause to be recorded, in a plain and distinct handwriting or in another legible manner, in suitable books or other accessible format to be provided and kept in the office of the register of deeds, all deeds, mortgages, maps, instruments and writings authorized by law to be recorded in the office of the register of deeds and left with the register of deeds for that purpose, and shall perform all other duties as are required by law."

When third parties submit information to a register of deeds for recording, Data Tree contends it should be up to the third party to omit any personal or private information such as social security

numbers if the filer does not wish the information to appear in the public filing. Further, these third parties have paid a fee for the purpose of making the document public, and Data Tree contends the Register of Deeds does not have the discretion or authority to deprive these third parties of their right to public recording.

Most of the arguments advanced by Data Tree under this issue would seem to fall more appropriately under the second issue it raises concerning the application of K.S.A. 2004 Supp. 45-221(a)(30). Our main concern under this issue is twofold: Does Data Tree's request for information involve a public record as that term is defined by K.S.A. 45-217(f)(1) and, if so, does K.S.A. 19-1204 prevent application of the exception to disclosure contained in K.S.A. 2004 Supp. 45-221(a)(30) of the KORA?

K.S.A. 45-217(f)(1) defines "[p]ublic record" to mean "any recorded information, regardless of form or characteristics, which is made, maintained or kept by or is in the possession of any public agency . . . ." It is beyond dispute that the Register of Deeds' office is a public agency and that the documents filed for record in that office are public records. Data Tree provides no support for its contention that the Register of Deeds' public records come under the KORA but are not subject to the disclosure exceptions under K.S.A. 2004 Supp. 45-221. Under K.S.A. 45-217(f), it is clear that the records kept by the Register of Deeds are public records as defined by the KORA and therefore are subject to its provisions, including K.S.A. 2004 Supp. 45-221(a)(30). Nothing in K.S.A. 19-1204 concerning the duties of a register of deeds provides otherwise. The issue in this case becomes whether the exercise of discretion by the Register of Deeds in requiring redaction prior to disclosure of the requested records was lawful, which is the subject of our inquiry into the second issue raised by Data Tree.

## (2) K.S.A. 2004 Supp. 45-221(a)(30)

Data Tree contends the inquiry as to whether a public agency may withhold certain personal information from disclosure under K.S.A. 2004 Supp. 45-221(a)(30) is whether there is a reasonable expectation of privacy with regard to that information. The district court found the exceptions to disclosure set out in 45-221 must be

given meaning or anything held by the government would be open. The district court determined that "sensitive information" may be redacted before distribution to the public and, in this case, that private information including social security numbers, mothers' maiden names, and dates of births clearly came within the purview of the disclosure exception in 45-221(a)(30).

K.S.A. 2004 Supp. 45-221(a) provides: "Except to the extent disclosure is otherwise required by law, a public agency shall not be required to disclose: . . . (30) Public records containing information of a personal nature where the public disclosure thereof would constitute a clearly unwarranted invasion of personal privacy." We note that K.S.A. 45-221 was amended three times in 2004; however, the amendments have no bearing on this case. See K.S.A. 2004 Supp. 45-221 (L. 2004, ch. 171, sec. 30); K.S.A. 2004 Supp. 45-221g (L. 2004, ch. 177, sec. 1); K.S.A. 2004 Supp. 45-221h (L. 2004, ch. 151, sec. 1).

The KORA, K.S.A. 45-215 *et seq.*, was passed by the legislature to ensure public confidence in government by increasing the access of the public to government and its decision-making processes. *Telegram Publishing Co. v. Kansas Dept. of Transportation*, 275 Kan. 779, Syl. ¶ 2, 69 P.3d 578 (2003). The primary focus of case law interpreting the KORA is on the overriding public policy set forth in K.S.A. 45-216(a), which provides: "It is declared to be the public policy of the state that public records shall be open for inspection by any person unless otherwise provided by this act, and this act shall be liberally construed and applied to promote such policy." This is reiterated in K.S.A. 45-218(a), which states in part: "All public records shall be open for inspection by any person, except as otherwise provided by this act." See *Telegram Publishing Co.*, 275 Kan. at 785; *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 416, 997 P.2d 681 (2000).

Determining whether the district court correctly applied the KORA and a particular exception to disclosure is a question of law involving interpretation of statute. *Wichita Eagle & Beacon Publishing Co. v. Simmons*, 274 Kan. 194, Syl. ¶ ¶ 3, 14, 50 P.3d 66 (2002); *Cypress Media, Inc.*, 268 Kan. at 416. The KORA provides specific exceptions to disclosure; however, the exceptions are to be

narrowly interpreted, and the burden is on the public agency opposing disclosure. *Telegram Publishing Co.,* 275 Kan. at 785; *Wichita Eagle & Beacon Publishing Co.,* 274 Kan. 194, Syl. ¶ 3.

K.S.A. 2004 Supp. 45-221(a), which contains the statutory exceptions to disclosure, sets out in detail 46 categories of records which public agencies are not required to disclose. The KORA does not prohibit disclosure of records contained within these exceptions but makes their release discretionary with the agency's official records custodian. *Harris Enterprises, Inc. v. Moore,* 241 Kan. 59, 63-64, 734 P.2d 1083 (1987).

Only two Kansas cases have had the opportunity to address the disclosure exception at issue here, *Southwest Anesthesia Serv., P.A. v. Southwest Med. Ctr.,* 23 Kan. App. 2d 950, 952-53, 937 P.2d 1257 (1997), and *Burroughs v. Thomas,* 23 Kan. App. 2d 769, 772, *rev. denied* 262 Kan. 959 (1997). In *Southwest Anesthesia,* the Court of Appeals found the exception in 45-221(a)(30) was inapplicable to the open records at issue because the medical center did not present any testimony or evidence in support of this exception. 23 Kan. App. 2d at 953.

In *Burroughs,* a coroner filed an autopsy report concerning Burroughs' death. Burroughs' spouse sought disclosure of the coroner's records. In determining whether an exception under 45-221(a)(30) applied in this situation, the Court of Appeals found that generally only the person whose privacy was invaded can bring a cause of action for invasion of privacy. Because Kansas does not provide for survival of a cause of action for invasion of privacy, the Court of Appeals concluded the exception to disclosure of public records in 45-221(a)(30) did not apply. 23 Kan. App. 2d at 772. Neither *Southwest Anesthesia* nor *Burroughs* is helpful in this case.

Acknowledging the paucity of case law on this particular exception, Data Tree cites several Kansas Attorney General opinions regarding treatment of 45-221(a)(30). The Supreme Court is not bound by the conclusions of attorney general opinions; however, the opinions are persuasive authority. See *General Building Contr., LLC v. Board of Shawnee County Comm'rs,* 275 Kan. 525, 536, 66 P.3d 873 (2003).

In Att'y Gen. Op. No. 2002-55, the Kansas Attorney General determined the issue under 45-221(a)(30) was whether the information is of a "highly personal nature." Looking at federal law analysis of the protection from state intrusion into fundamental aspects of personal privacy and whether such information is given protection, the decision maker considers: "(1) if the party asserting the right has a legitimate expectation of privacy [in that information], (2) if disclosure serves a compelling state interest, and (3) if disclosure can be made in the least intrusive manner." If the first factor is not met, the second and third factors need not be addressed. The Attorney General considered that the information sought in this particular inquiry was water usage, billing history, and contact information. Another subsection of 45-221 already required release of this information if requested. See K.S.A. 2004 Supp. 45-221(a)(26). Furthermore, this information was to be shared between municipally operated utility companies for use in billing customers and not disseminated to the general public. The Attorney General concluded customers had no reasonable expectation that this information would remain confidential.

Interpreting the operative phrase of 45-221(a)(30) in Att'y Gen. Op. No. 2001-33, the Kansas Attorney General stated: "We believe that a high standard is suggested by the words, 'clearly unwarranted invasion of personal privacy.' The privacy interest is one that applies only when release would reveal truly intimate details, or present some unusual danger." The Attorney General derived this standard from Connecticut, which had adopted the Restatement (Second) of Torts § 652D (1977) definition of a tort action for the invasion of personal privacy. Connecticut was attempting to establish an objective standard to determine what information can be closed as constituting an "invasion of personal privacy" under the Freedom of Information Act (FOIA), see 5 U.S.C. § 552 (2000), and held that home addresses of public employees were open under the Act as such disclosure was not "highly offensive."

The records sought in that Kansas Attorney General opinion were the membership list of the Coffeyville City Golf Course, including home addresses. The Attorney General noted that Kansas had a statute, K.S.A. 21-3914 (now repealed; L. 2003, ch. 126, sec.

5), which made it a crime to obtain a list of names and addresses from public records "for the purpose of offering for sale any property or service to the persons therein listed." (Kansas has now enacted civil penalties for such violations as part of the KORA. See K.S.A. 2004 Supp. 45-230; L. 2003, ch. 126, sec. 1.) Consequently, the Attorney General found that this statute would have no meaning if this information was closed and, therefore, in Kansas names and addresses are open absent special circumstances. Interestingly, the opinion notes that Att'y Gen. Op. Nos. 98-38 and 87-168 had previously concluded that social security numbers may be closed because of the danger of identity theft. See Att'y Gen. Op. No. 2001-33.

Data Tree discusses two Kansas Attorney General opinions on social security numbers: One finding no expectation of privacy in social security numbers when, according to Data Tree, the number is contained on a document that the individual "knows and expects that others will see," the other finding no public interest in disclosing the social security number of a crime victim. See Att'y Gen. Op. Nos. 98-38 and 97-39.

Att'y Gen. Op. No. 97-39 stated that "[g]iven the plethora of laws that require disclosure of one's social security number, it is our opinion that an individual has no reasonable expectation of privacy in his or her social security number *as against the government* when applying for a professional, occupational, or marriage license." (Emphasis added.) The opinion was addressing 1997 S.B. 140, sec. 6, requiring social security numbers on certain license applications, as part of enactments facilitating the ability of the Kansas Department of Social and Rehabilitation Services to enforce child support obligations. K.S.A. 45-221(a)(30) was not an issue and not discussed.

Data Tree does not discuss a Kansas Attorney General opinion that determined social security numbers supplied in connection with the annual registration of attorneys are not subject to disclosure pursuant to 45-221(a)(30) at the discretion of the Clerk of the Appellate Courts. See Att'y Gen. Op. No. 87-168. The opinion indicated the purpose of the privacy exception has been stated as:

> " '[The privacy exception] is intended to exempt information in government records that relates to the intimate details of a person's private life. The public's right to have access to information contained in government records is thus qualified by protection of an individual's right to maintain the privacy of personal matters having no bearing on matters of public interest.' Frederickson, *Letting the Sunshine In: An Analysis of the 1984 Kansas Open Records Act*, 33 U. Kan. L. Rev. 205, 256 (1985)." Att'y Gen. Op. No. 87-168.

Noting that § 7 of the federal Privacy Act of 1974, see 5 U.S.C. § 552a (2000), gives an individual a privacy interest in his or her social security number, the Attorney General found the release of an individual's social security number, in this instance, would be an invasion of personal privacy.

The attorney registration form also includes an attorney's date of birth, among other information. The Attorney General further opined:

> "We know of no law which prohibits disclosure of the other information contained in the list. The information does not fall under the privacy exception as disclosure would not constitute a 'clearly unwarranted invasion,' and the public's right to know outweighs any privacy interests in the information. 'Information such as place of birth, *date of birth*, date of marriage, employment history, and comparable data is not normally regarded as highly personal [*dependent upon where it is found*] . . . .' *Department of State v. Washington Post Co.*, 456 U.S. 595, 600, 102 S. Ct. 1957, 1961, 72 L .Ed. 2d 358 (1982)." (Emphasis added.) Att'y Gen. Op. No. 87-168.

Data Tree cites Ohio Attorney General Opinion No. 96-034, which it claims is "virtually identical" to this case. The inquiry in the Ohio case asked whether a county recorder has the obligation to redact social security numbers on recorded documents "prior to recording." The Ohio Supreme Court had issued a decision in *State ex rel. Beacon Journal Publishing Co. v. Akron*, 70 Ohio St. 3d 605, 640 N.E.2d 164 (1994), that reasoned because disclosure of employees' social security numbers would violate their constitutional rights to privacy, release of the numbers would be prohibited by federal law. Therefore, for purposes of Ohio's public records law, release of social security numbers comprised records the release of which is prohibited by state or federal law. *Cf.* K.S.A. 2004 Supp. 45-221(a)(1) (public agencies are not required to disclose records, the disclosure of which is specifically prohibited or restricted by

federal or state law, including rules of the Kansas Supreme Court to restrict or prohibit disclosure).

The Ohio Attorney General determined that *State ex rel. Beacon Journal Publishing Co.* did not impose an obligation to remove social security numbers on documents submitted for recording because a similar expectation of privacy did not exist. Because a county recorder receives and records instruments in accordance with specific directives and recording the instruments is for the purpose of keeping public records, the Attorney General reasoned a person who furnishes his or her social security number in connection with a mortgage, financing statement, or other recordable instrument which is then submitted for recording should not reasonably expect the number to thereafter remain a private matter. Therefore, it was the context within which a social security number is furnished that determines a person's expectation of privacy. Oh. Att'y Gen. Op. No. 96-034.

The Register of Deeds correctly notes that Data Tree's reliance on the Ohio Attorney General opinion is misplaced because the question presented there was whether the county recorder was "required" to remove or redact social security numbers that appear on mortgages and other documents "before" recording the document. The opinion does not address the issue of discretionary redaction of such information upon a request to purchase bulk copies of public records maintained by the Register of Deeds.

Data Tree would find instructive Professor Frederickson's suggestion that

"the words 'clearly unwarranted' appear to limit the application of the privacy exception to records containing personal information, the release of which would serve no public purpose. A balancing formula is created and appears to tilt toward disclosure of records, because that result serves the overall intent of the act." Frederickson, *Letting the Sunshine In: An Analysis of the 1984 Kansas Open Records Act*, 33 Kan. L. Rev. 205, 256 (1985).

The Register of Deeds points out that Data Tree has not suggested a public purpose for release of social security numbers and, to the contrary, that no public purpose exists for the release of social security numbers, mothers' maiden names, and dates of births.

Professor Frederickson also stated that the KORA was based in part on the Kentucky Open Records Act. See 33 Kan. L. Rev. at 207. The Register of Deeds contends Kentucky courts have held that the release of social security numbers may be restricted as an invasion of personal privacy.

In *Zink v. Commonwealth,* 902 S.W.2d 825 (Ky. App. 1994), an attorney requested the Kentucky Department of Workers Compensation provide him access to injury reports filed with the department which contained personal information including names, home addresses, telephone numbers, dates of births, social security numbers, and more. The Department denied the request in part based on an exemption from Kentucky open records on the grounds that access to the reports would constitute a "clearly unwarranted invasion of personal privacy." The district court granted summary judgment in favor of the Department.

To determine whether the requested information constituted a "clearly unwarranted invasion of personal privacy," the Kentucky Court of Appeals applied the analysis from its Supreme Court in *Kentucky Bd. of Examiners of Psychologists v. Courier-Journal & Louisville Times Co., Ky.,* 826 S.W.2d 324 (1992). The first determination is whether the information is of a "personal nature." If so, the next determination is whether public disclosure "would constitute a clearly unwarranted invasion of personal privacy." This requires a "comparative weighing of antagonistic interests" where the "privacy interest in nondisclosure is balanced against the general rule of inspection and its underlying policy of openness for the public good," and the circumstances of a given case affect the weighing or balancing of interests. 902 S.W.2d at 828.

The Kentucky Court of Appeals found that the information contained in the injury reports was clearly of a personal nature. Moving to the next determination, the court stated the analysis did not turn on the purpose of the request for information or the identity of the person making the request. Rather, what should be considered is the extent to which disclosure would serve the principal purpose of the open records act, an approach the United States Supreme Court has taken in analyzing requests under the FOIA, citing *Dept.*

*of Justice v. Reporters Committee*, 489 U.S. 749, 774-75, 103 L. Ed. 2d 774, 109 S. Ct. 1468 (1989). 902 S.W.2d at 828.

Applying the balancing or weighing portion of its analysis, the Kentucky Court of Appeals found the information contained in the injury reports would reveal little or nothing about an agency's conduct and the public interest in disclosure was de minimis at best. 902 S.W.2d at 829. Weighing the interests of the injured workers, particularly the release of the workers' social security numbers, the court stated:

"Those nine digits today represent no less than the keys to an information kingdom as it relates to any given individual. Access to a wealth of data compiled by both government agencies and private enterprises such as credit bureaus is obtainable simply upon presentation of the proper social security number." 902 S.W.2d at 829.

Data Tree appears to advocate applying principles dealing with the tort of invasion of personal privacy to the analysis of what would constitute a "clearly unwarranted invasion of personal privacy." However, this would divorce the analysis from the underlying public purpose of the KORA. See *Telegram Publishing Co.*, 275 Kan. 779, Syl. ¶ 2. It appears that courts generally analyze the issue by balancing the privacy interests of the individual with the public's need to know. See *Kentucky Bd. of Examiners of Psychologists*, 826 S.W.2d 324; 33 Kan. L. Rev. at 256; Annot., *What Constitutes Personal Matters Exempt from Disclosure by Invasion of Privacy Exemption Under State Freedom of Information Act*, 26 A.L.R. 4th 666, § 2.

Applying a balancing test to the case at hand, the Register of Deeds seeks to redact social security numbers, mothers' maiden names, and dates of births from Data Tree's public records request. Clearly, social security numbers are considered information of a personal nature. In addition to the Attorney General opinions and case law discussed above, Kansas statutes lend support to the personal or private nature of social security numbers. See K.S.A. 2004 Supp. 8-240(b)(1) (social security numbers are not required as identifying numbers on drivers licenses); K.S.A. 2004 Supp. 25-2320(b) (social security numbers must be removed from voter registration records made available to the public); K.S.A. 2004 Supp.

44-550b(a)(4) (social security numbers as an exception to open records under the Workers Compensation Act).

An individual's social security number, date of birth, and mother's maiden name are often used as identifiers for financial accounts or for obtaining access to electronic commerce. Most people would consider this information of a "personal nature." The United States Supreme Court, interpreting the FOIA, stated that information is " 'private' if it is 'intended for or restricted to the use of a particular person or group or class of persons: not freely available to the public.' " *Reporters Committee*, 489 U.S. at 763-64. Birth dates have been held to be private and their disclosure a clear invasion of personal privacy. See *Oliva v. United States*, 756 F. Supp. 105, 107 (E.D.N.Y. 1991); *Scottsdale Unified School Dist. v. KPNX*, 191 Ariz. 297, 955 P.2d 534 (1998). We see no reasons why social security numbers, mothers' maiden names, and dates of births do not fall into this privacy realm.

Data Tree makes a valid argument that the Register of Deeds is unique in that it is the depository of documents specifically for public notice, and that individuals may have some lesser expectation of privacy in these documents. The weighing balance may very well tilt more heavily in favor of full public disclosure where disclosure would serve the principal purpose of the KORA. However, the information being sought by Data Tree is not for its public notice properties but for commercial purposes, *i.e.*, the sale of the information to business interests which have no relationship to the transaction recorded. The public interest to be served by releasing unredacted documents with social security numbers, mothers' maiden names, and dates of births to a data collection company which intends to sell this information for a profit is at best insignificant.

Based upon the specific facts of this case, we conclude that where balancing the privacy interests of the individual with the public's need to know or, more specifically, where disclosure of the personal or private information fails to significantly serve the principal purpose of the KORA, nondisclosure is favored if such nondisclosure complies with other requirements of the KORA. We further conclude that under the specific facts of this case, the Reg-

ister of Deeds did not abuse his discretion in determining that public disclosure of the personal information within the documents requested constituted a clearly unwarranted invasion of personal privacy.

## (3) Cost of Redaction

Data Tree contends that if redaction is required by any provision of law, the costs of such redaction must be borne by the Register of Deeds. The district court ruled that pursuant to K.S.A. 45-219, all costs of producing the requested records including the cost of redaction were to be borne by Data Tree as the requester. The district court noted this was similar to the policy applicable to litigation costs where a party requesting records is responsible for the costs of their production.

In general, K.S.A. 45-219(c)(1) provides in part that "each public agency may prescribe reasonable fees for providing access to or furnishing copies of public records" and, in the case of fees for copies of records, "the fees shall not exceed the actual cost of furnishing copies, including the cost of staff time required to make the information available." K.S.A. 2004 Supp. 45-221(d) provides in relevant part that "[i]f a public record contains material which is not subject to this act, the public agency shall separate or delete such material and make available to the requester that material in the public record which is subject to disclosure pursuant to this act."

Data Tree argues that if the Register of Deeds has the duty to "separate and delete" material not subject to disclosure, the duty is an affirmative duty on the part of the Register of Deeds who must bear the costs of such action. According to Data Tree, the plain language of K.S.A. 2004 Supp. 45-221(d) requires the custodian of the records to perform the act of redaction and then "make available" the remaining records but does not require the requester of the records to do anything. Data Tree further argues that K.S.A. 45-219(c)(1) provides for fees to *make* copies and to make information *available*, but it does not authorize fees such as those established by the Register of Deeds to withhold copies or to make information unavailable.

In support of its argument, Data Tree first relies on Professor Frederickson's belief that requesters should not bear the costs of "cleansing" records of exempted materials and that the costs of copying and staff time charged to a requester threaten to be the biggest impediment to open records under the KORA. See 33 Kan. L. Rev. at 266. It also argues that with regard to the federal FOIA, federal courts have consistently placed the cost burdens for the excision of information upon the governmental agency. Data Tree then discounts the holding of *State ex rel. Stephan v. Harder*, 230 Kan. 573, 589-90, 641 P.2d 366 (1982), which allowed a state agency to pass costs of redaction along to the requester, on grounds the decision in that case predated the KORA and was based on a statute silent on the issue of redaction but later repealed when the KORA was enacted. Data Tree argues the reasoning of *Harder* was superseded by the "separate and delete" language of K.S.A. 2004 Supp. 45-221(d).

The Register of Deeds asserts that throughout K.S.A. 45-219, the emphasis is that the requester bears the burden of the cost of reproducing public records. He argues the language of the current statute is in keeping with the holding of *Harder* and points to the quotation therein of a portion of a Georgia Supreme Court decision that held the reasonable costs of deleting nondisclosable information from certain public records are to be borne by the requester. See 230 Kan. at 581-82 (quoting *Griffin-Spalding &c. Auth. v. WKEV*, 240 Ga. 444, 241 S.E.2d 196 [1978]). The issue determined in that portion of the *Harder* opinion, however, did not concern the assignment of redaction costs; rather, it concerned whether the former Kansas Public Records Inspection Act, K.S.A. 45-201 *et seq.* (Ensley 1981), required the deletion of confidential information from an otherwise disclosable record.

The Register of Deeds also argues that Data Tree points to nothing in the current law that would shift the cost of redaction from the requester to the government. He also notes that the Frederickson article observes that the KORA is silent on the issue of who bears the cost of redaction. With regard to the FOIA, he notes that the FOIA provides for fee waivers in limited circumstances while the KORA does not, and because Data Tree's interest is solely for

commercial purposes it would not be eligible for a fee waiver if it made a request under the FOIA.

No Kansas cases have considered who bears the cost of redaction under the KORA. The KORA is silent on this specific point. However, the Register of Deeds correctly notes that the KORA contemplates the payment of a fee by a requester of copies of public records, K.S.A. 45-219(a); if it is impractical to copy a public record at the place the record is located and if it is necessary to use another facility for copying, "the cost thereof shall be paid by the person desiring a copy of the records," K.S.A. 45-219(b); a public agency may charge the same fee for the services rendered in supervising the copying as for furnishing copies, K.S.A. 45-219(b); and fees for copies of records shall not exceed the actual cost of furnishing copies, including the cost of staff time required to make the information available, K.S.A. 45-219(c). Redaction of information in public records not subject to disclosure is an act that would be included in the "actual cost of furnishing copies." Nothing in the KORA requires or contemplates shifting any portion of the actual cost of furnishing copies of the requested records from the requester to the custodian of the records.

Although a now-repealed statute was involved when the *Harder* court considered who was to bear the expense of deleting exempt material from an otherwise disclosable record, our reasoning is equally applicable to this situation. The KORA does not specifically mention who is to bear the cost of redaction. It does, however, make clear the legislative intent that actual costs of furnishing copies of public records may be recovered by the agency and that the person seeking the records should bear the actual expense. Charging the requesting party with the attendant expense does not appear inconsistent with the purpose of the KORA. The district court did not err in ruling the costs of producing records, including the costs of redaction, are to be borne by Data Tree.

#### (4) Attorney Fees

Finally, Data Tree contends it was entitled to attorney fees under K.S.A. 45-222(c) because the denial of access by the Register of Deeds was not in good faith and was without a reasonable basis in fact or law.

We note that K.S.A. 45-222 was amended in 2004; see K.S.A. 2004 Supp. 45-222(c). For purposes of this appeal, the amendments are not applicable and K.S.A. 45-222(c) provided:

"In any action hereunder, the court shall award attorney fees to the plaintiff if the court finds that the agency's denial of access to the public record was not in good faith and without a reasonable basis in fact or law. The award shall be assessed against the public agency that the court determines to be responsible for the violation."

The district court ruled that the change in policy of the Register of Deeds from nonredaction to redaction of social security numbers, mothers' maiden names, and dates of births from recorded instruments was not made in bad faith and was taken during the ordinary course of his duties. Accordingly, the district court ruled that no attorney fees were to be awarded in this case.

On appeal, Data Tree first complains that the Register of Deeds did not mention the redaction issue until approximately 4 months after the initial request for the microfilm copies and that once Data Tree acquiesced providing an affidavit concerning the use of the information, the Register of Deeds advanced a new theory for nondisclosure which would involve an enormous expense to Data Tree. Data Tree asserts that at the same time, the Register of Deeds engaged in selective application of the statute by providing unredacted copies of records to Microfilm and possibly others for resale to that company's customers.

Data Tree further argues there is no reasonable basis in law or fact to support the denial of access because there is no evidence that release of the information would amount to a "clearly unwarranted invasion of personal privacy." Data Tree asserts that the denial of access was based on nothing more than the personal opinion of the Register of Deeds and, relying on *Cypress Media, Inc. v. City of Overland Park*, 268 Kan. 407, 417, 997 P.2d 681 (2000), notes that a public entity opposing disclosure has the burden of proving the applicability of an exemption by providing a sufficiently detailed record showing the reasons why a claimed exemption applies to the materials requested. Additionally, Data Tree argues that if the KORA is not interpreted in favor of disclosure, the Register of Deeds has violated his own statutory duties by refusing

access to recorded instruments in their entirety which further indicates there was no reasonable basis for the denial of access. Data Tree cites no case law in support of its arguments that the Register of Deed's actions were not in good faith and were without a reasonable basis in fact or law.

The Register of Deeds first counters that Data Tree was not denied access to the records requested; rather, it was denied only unredacted copies of the records and Data Tree chose not to pay the costs of redaction. The Register of Deeds then asserts that the issue of redaction did not arise until he received various complaints about the information in question being obtained by outside entities. He further asserts that he changed his policy to protect against any unwarranted invasion of personal privacy other courts have found could result from the release of social security numbers, mothers' maiden names, and dates of births. He argues that his change of policy does not amount to bad faith and, further, that because there are no Kansas cases which fully address the issue concerning redaction of these items, it was reasonable for him to rely on decisions by other state and federal courts that have addressed identical issues.

The Register of Deeds points out that records were not provided to Microfilm for the purpose of resale but were provided for the purpose of creating microfilm records. When it was determined that unredacted materials should not be released to requesters without restrictions, Microfilm was directed to cease that practice.

The Register of Deeds further argues that attorney fees are not proper because this matter, which raises an issue of first impression, was decided on motions for summary judgment without a factual or evidentiary hearing. In support, the Register of Deeds cites *Willis v. Kansas Highway Patrol*, 273 Kan. 123, 133-34, 41 P.3d 824 (2002) (attorney fees against KHP properly denied because of reasonable arguments by KHP and question of first impression), and *Telegram Publishing Co. v. Kansas Dept. of Transportation*, 275 Kan. 779, 784-90, 69 P.3d 578 (2003) (attorney fees awarded by district court upheld in first impression case because arguments lacked merit).

For attorney fees to be awarded under K.S.A. 45-222(c), an agency's action must be both "not in good faith" and "without a reasonable basis in fact or law." Because there was no factual or evidentiary hearing below, there was no showing that the actions of the Register of Deeds in responding to Data Tree's request was "not in good faith." Further, whether disclosure of social security numbers, mothers' maiden names, and dates of births constituted a clearly unwarranted invasion of personal privacy under K.S.A. 2004 Supp. 45-221(a)(30) was a question of first impression for Kansas courts and was supported by meritorious arguments. Thus, there was a "reasonable basis in fact or law" for the actions of the Register of Deeds in this case. *Cf. Willis*, 273 Kan. at 133-34. The district court did not err in not awarding attorney fees to Data Tree.

Affirmed.

GERNON, J., not participating.

LARSON, S.J., assigned.