No. 124,679

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

DAVIS HAMMET,
*Appellant*,

v.

SCOTT SCHWAB, Secretary of State,
*Appellee*.

SYLLABUS BY THE COURT

1.

The public policy of the State of Kansas expressed in the Kansas Open Records Act, K.S.A. 45-215 et seq., is that public records shall be open for public inspection by any person unless the records are within one of the exceptions created in the Act. The Act is to be liberally construed and applied in order to promote the policy of openness. K.S.A. 45-216(a).

2.

State agencies are required to maintain a register, open to the public, that describes the information that the agency maintains on computer facilities, and the form in which the information can be made available using existing computer programs. K.S.A. 2020 Supp. 45-221(a)(16).

3.

Public records include any recorded information, regardless of form, characteristics, or location, which is made, maintained, or kept by or is in the possession of any public agency. K.S.A. 2020 Supp. 45-217(g)(1)(A).

4.

The Kansas Open Records Act may be enforced by injunction, mandamus, declaratory judgment, or other appropriate order. K.S.A. 2020 Supp. 45-222(a).

5.

A public agency can ask for reasonable fees for providing access to or furnishing copies of public records. The fees for copies of records shall not exceed the actual cost of furnishing copies, including the cost of staff time required to make the information available. K.S.A. 2020 Supp. 45-219(c)(1). The fees for providing access to records maintained on computer facilities shall include only the cost of any computer services including staff time required. K.S.A. 2020 Supp. 45-219(c)(2).

Appeal from Shawnee District Court; TERESA L. WATSON, judge. Opinion filed July 22, 2022. Reversed and remanded with directions.

*Joshua M. Pierson*, of ACLU Foundation of Kansas, for appellant.

*Clayton L. Barker*, general counsel, of Kansas Secretary of State's office, for appellee.

*Teresa A. Woody*, of Kansas Appleseed Center for Law and Justice, Inc., of Lawrence, for amicus curiae Kansas Appleseed Center for Law and Justice, Inc.

Before ARNOLD-BURGER, C.J., HILL and COBLE, JJ.

HILL, J.:  Public records in Kansas are held in trust for the public by our elected officials and state agencies. By law, under the Kansas Open Records Act, those records must remain open and accessible for the use of the public. A deliberate action taken by a public official that denies reasonable access to public records violates the Act. The Secretary of State here directed his computer software vendor to turn off a computer report feature called the provisional ballot detail report. That report had, in previous litigation between these parties, been held by the district court to be a public record. By turning off the report capability, the Secretary denied reasonable public access to that public record and the information within it. That action—choosing to conceal rather than reveal public records—violates KORA. We must reverse the district court's ruling to the contrary.

*These parties have battled over public records before.*

Davis Hammet appeals a district court's grant of summary judgment to the Secretary of State, Scott Schwab, and the denial of Hammet's motion for summary judgment. We have gleaned these facts from the competing motions filed in district court. We focus on one computer-generated report:  the provisional ballot detail report.

Whenever a voter casts a provisional ballot in any Kansas election, local election officials usually note this fact, along with other details, and transmit that information to the office of the Secretary via computer software used in all elections. This software is called the Election Voter Information System, often called ELVIS. ELVIS is the statewide voter registration database for the State of Kansas and is maintained by the Secretary's office. This software is owned by Election Systems and Software, and the Secretary contracts with the company to run and maintain ELVIS. The provisional ballot detail report is one of many reports ELVIS can generate.

3

That report accumulates the information contained in the provisional ballot data received by ELVIS. To be clear about the source of this data, county election officials input the data for their counties and send it to the Office of the Secretary via ELVIS. No one in the Secretary's office inputs, modifies, or deletes the information that county officials enter into ELVIS. Counties are not legally required to keep track of provisional ballot information, but many do. The counties that do track it will input the data at different times and in different manners.

This provisional ballot data is perishable. It is not permanently stored anywhere. With each election cycle, new data replaces the old data. Thus, the data displayed in a provisional ballot detail report depends on when it is generated in relation to a particular election. Each election will produce different data.

The subject of this case is Hammet's KORA request to the Secretary for a provisional ballot detail report. Hammet is the founder of Loud Light, an organization that works to promote civic participation among young people and mobilize underrepresented Kansas communities. Hammet and Loud Light use the provisional ballot detail report to identify individuals who cast provisional ballots and help them cure the deficiencies in their ballots to ensure that their vote is counted. They also use the report to conduct election research so they can inform the public and advise state and local officials how policies and laws impact voters.

*In their first lawsuit, the district court ordered the Secretary to print the report.*

This case is not the first time Hammet has requested the report. In September 2019, Hammet made a KORA request for the 2018 general election provisional ballot detail report. After the Secretary denied his request, Hammet sued the Secretary in June 2020. During that lawsuit, Hammet announced that he would seek the same report for the

4

2020 primary and general elections. The Secretary resisted the request, arguing that the report contained confidential information and that it was not a public record subject to a KORA request.

The district court resolved the dispute a month later by ordering the Secretary to produce the 2018 report, after ruling the report was a public record under KORA and not subject to any exceptions. The Secretary had claimed that until Hammet made his September 2019 request, he did not know that ELVIS was programmed to create a provisional ballot detail report. The report was disclosed at no extra cost to Hammet. There was no appeal of that district court's ruling, decision, or order.

After that, Hammet requested updated provisional ballot detail reports for the 2020 primary election on August 4, 2020, and August 11, 2020. The Secretary fulfilled both requests at no charge.

But two days later, on August 13, 2020, the Secretary asked ES&S, the software vendor, to remove his office's access to the provisional ballot detail report feature. This software change was not implemented immediately, so when Hammet requested another provisional ballot detail report for the 2020 primary election on September 9, 2020, the Secretary provided a copy of the report the same day, again at no charge.

Finally, on September 13, 2020, ES&S turned off the provisional ballot detail report option from the ELVIS system in the Secretary's office, at the direction of the Secretary. This change was not the result from a software upgrade nor any malfunction in the software. The data remained in ELVIS, but the report could no longer be produced easily without the appropriate software commands.

*This time, the Secretary denied Hammet access to the report.*

Hammet's next KORA request for a provisional ballot detail report for the 2020 primary election—the request that is the basis of this lawsuit—was made on October 6, 2020. Hammet and the Secretary exchanged several emails over the course of the next week.

At first, the Secretary said it sent Hammet's request to the elections division to run the report. After that, he said that his office could no longer ask for the provisional ballot detail report. The Secretary suggested that Hammet could request the reports from all 105 counties since they still had access to the feature that would generate reports. The county reports would be limited to each county's information.

Hammet and the Secretary continued to communicate about Hammet's record request. Hammet clarified that his request was not limited to the provisional ballot detail report, but more generally for the provisional ballot data related to the 2020 primary election. Hammet suggested that the Secretary could accomplish this by restoring the provisional ballot detail report feature, creating a custom report, or, as a last resort, by pulling each individual voter file.

The parties have stipulated that the Secretary could ask ES&S to simply restore the Secretary's ability to create a provisional ballot detail report. In other words, turn back on the report feature.

Rather than restore the feature, the Secretary had a different idea. Hammet could, instead, pay ES&S to gather the data. The company would require a data specialist to write a script to pull the data. The job would take about three hours at a contractual rate of $174 per hour. ES&S could not say when the data specialist could begin the job

because the 2020 election was creating an unpredictable workflow. The Secretary told Hammet that he would need to pay $522 before the Secretary would ask ES&S to begin the job. The Secretary did not ask for prepayment for the time his employees would expend to honor Hammet's request.

The Secretary's idea was for Hammet to pay $522 for a report that Hammet had received before at no charge.

This suggestion was not agreeable to Hammet. He believed that waiting for ES&S to pull the data would make him lose access to the data. The provisional ballot data for the primary election would be cleared so county officials could begin to input provisional ballot data for the general election. So Hammet decided to send individual KORA requests to each county asking for the provisional ballot detail reports. Only 13 counties complied with his request before the canvass. Hammet did not obtain the data he wanted before the general election.

Hammet sued the Secretary a second time. Once again he was seeking the same report that he had received in his prior lawsuit. The district court decided the matter on competing motions for summary judgment. In support of his motion for summary judgment in district court, Hammet included an email from a county clerk in which the clerk claimed that they were advised at a state-wide conference not to respond to Hammet's KORA request until "the Mandated State Requirements that are placed on the election officer has been completed." The Secretary denied that it instructed counties to delay their responses to Hammet's KORA requests but asserted that the facts were not material and thus the dispute should not preclude summary judgment. The district court held that the provisional ballot detail report ceased being a public record subject to KORA when ES&S removed the Secretary's ability to produce the report. While the court found it understandable that Hammet questioned the Secretary's motives, it stated that the

7

Secretary's motives were immaterial to the legal questions presented in the parties' motions for summary judgment.

*The Kansas Open Records Act controls this appeal.*

The Act is found at K.S.A. 45-215 et seq., Kansas Open Records Act. KORA defines public records, establishes the public policy that the Legislature intends to promote through KORA's enforcement, and creates ways to enforce its provisions. KORA also creates procedures on how requests for public records are to be processed. All of those procedures are to be guided by reasonableness. There are several parts of KORA that are pertinent.

The Act defines public records—what is open and what is not—and chisels out a broad statement of public policy. This stated policy provides a context for how courts, public officials, state agencies, and the public should interpret this Act. The policy is one of openness. Found in K.S.A. 45-216(a), the statute says:

> "It is declared to be the public policy of the state that public records shall be open for public inspection by any person unless otherwise provided by this act, and this act shall be liberally construed and applied to promote such policy."

This policy means that public officials and agencies must reveal public records and not conceal them, unless there is a legal reason that prevents disclosure of the information.

And there are many records that are not open to the public. For example, there are 55 types of records mentioned in K.S.A. 2020 Supp. 45-221 that are not open and are not subject to a KORA request. But those records can be disclosed at the discretion of the

8

records custodian. Our Supreme Court has cautioned, however, that these "exceptions are to be narrowly interpreted," and the burden of proving that an exception applies is on the agency opposing disclosure. *Data Tree v. Meek*, 279 Kan. 445, 454-55, 109 P.3d 1226 (2005). This interpretation by the court promotes the stated policy of openness. But one of those exceptions requires some elaboration.

That exception is computer software programs. A public agency need not disclose software programs for electronic data processing and any accompanying documentation. K.S.A. 2020 Supp. 45-221(a)(16). We take this to mean that, for example, the software code that creates ELVIS itself is not subject to a KORA request. But even though an agency need not provide the actual software programs to fulfill a KORA request, state agencies are required to "maintain a register, open to the public, that describes:  (A) The information that the agency maintains on computer facilities; and (B) the form in which the information can be made available using existing computer programs." K.S.A. 2020 Supp. 45-221(a)(16).

The parties here agree that none of those 55 exceptions apply here.

KORA broadly defines public records. They are more than paper and ink pages shoved into file folders or heavy old bound volumes hoisted onto roller shelves. The definition of public record includes, "any recorded information, regardless of form, characteristics or location, which is made, maintained or kept by or is in the possession of . . . [a]ny public agency." K.S.A. 2020 Supp. 45-217(g)(1)(A). In our view, this definition includes the data that is encoded in the ELVIS software.

Finally, KORA is to be enforced by the Kansas courts. District courts have jurisdiction to enforce KORA "by injunction, mandamus, declaratory judgment or other appropriate order." K.S.A. 2020 Supp. 45-222(a). A district court may also award

attorney fees if it finds that an "agency's denial of access to the public record was not in good faith and without a reasonable basis in fact or law." K.S.A. 2020 Supp. 45-222(d). Civil penalties may be assessed against a public agency according to K.S.A. 2020 Supp. 45-223 for knowingly violating the Act or not intentionally furnishing the information as required by KORA. The Legislature means what it says: open records in Kansas are to remain open.

*We must approach these summary judgment motions just as the district court did.*

The district court entered judgment based on competing motions for summary judgment. It granted one and denied the other. We are not bound by that legal judgment. We are in the same position as the district court. Our standard of review for summary judgment is often mentioned and well-established:

> "Appellate courts apply the same rules [as the district court] and, where they find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment is inappropriate. Appellate review of the legal effect of undisputed facts is de novo." *GFTLenexa, LLC v. City of Lenexa*, 310 Kan. 976, 982, 453 P.3d 304 (2019).

Therefore, we must consider both Hammet's and the Secretary's motions for summary judgment anew.

We have two questions to answer in this appeal. First, did the Secretary violate KORA when he directed ES&S to turn off the provisional ballot report feature? Second, did the $522 fee charged by the Secretary violate KORA because it was excessive? The answer to both questions is yes.

10

The history between these parties creates a context that guides our decision. Actions are usually legally significant. The Secretary, at first, refused to provide the provisional ballot detail report and fought it out with Hammet in district court to prevent its disclosure. When the district court ordered him to produce the report, ruling that it was an open record, the Secretary did not appeal that ruling. Instead, the Secretary criticized the district court's decision, stating in part that "'[t]he Kansas Judiciary, once again, paid disrespect to the intent of policy.'"

A few days later, knowing that Hammet intended to submit another KORA request for the most recent provisional ballot detail report, the Secretary asked ES&S to remove access to the software commands that creates the report. Naturally, the software company complied with the wishes of its client and turned off the feature.

There is nothing in this record that suggests this request to turn off the report feature was made to improve ELVIS. There is no record that this feature deletion would decrease the expenses of the Secretary's office. Turning off this feature is not an advanced process. Simply put, the Secretary did not want it.

In fact, the Secretary has never really offered a reason why, a few days after he lost in court on the first report request, he directed ES&S to turn off the report feature. Instead, he argues in his brief that this is a discretionary management decision that balances access of the public with the burdens of a KORA request. In his view, KORA requests should not hold the Secretary hostage. He contends that his motivation to delete the feature is irrelevant because the report software commands are "a functionality" and the function is not a public record.

None of these arguments are persuasive. It is true that, as someone who holds public office, the Secretary does enjoy discretion in how to run that office. Sound

11

discretion implies that one who exercises that discretion has a good reason for choosing one action over another, or for refraining from one action or another. We have never been given the Secretary's reason for turning off the report feature. How can we say, then, that he has exercised sound discretion? We do know that official discretion does not grant the Secretary the right to violate KORA. See K.S.A. 45-218. Deliberate actions have consequences. Public officials must also respect the public policy formulated by the Legislature.

Nor can we see how this KORA request held the Secretary hostage, when all it required was for one of his employees to push a button on the computer. Several such reports were previously provided by his office to Hammet with apparent ease and at no additional expense to Hammet. The only difference between those earlier requests and this request was the Secretary making the report inaccessible to his office and the public by turning the report feature off. We see no evidence that this KORA request placed an onerous burden on the Secretary's office. Any burden here is self-imposed and does not arise from the KORA request.

This report feature may have been of no use to the Secretary but it was useful to Hammet and the public. And that is the point of open public records. Public access is the rule, not the exception.

In passing, we must comment on a case both parties cite, *Roe v. Phillips County Hospital*, No. 122,810, 2022 WL 414402 (Kan. App. 2022) (unpublished opinion), *rev. granted* 315 Kan. ___ (June 17, 2022), but it does not help our analysis. In *Roe*, a panel of our court reversed a district court order requiring the hospital to provide some electronic public hospital records in the format of the requester's choice. 2022 WL 414402, at *1. That is factually different than this case. In *Roe*, the hospital would provide the records in a format of the hospital's choosing. Here, the Secretary was not

12

going to provide the provisional ballot detail report at all, even though he could ask ES&S to simply restore the report function.

Turning to the suggested "functionality exception" to KORA, as created by the district court here, we note that what once was a public record—the provisional ballot detail report—as ruled by the district court in the parties' first lawsuit, has now been transformed in that same court a few months later into a mere "functionality." Charmed by the Secretary's argument, the district court has now ruled that the report is not a public record subject to KORA disclosure. What has happened to cause this transformation? There has been only one change that we can see: the Secretary turned the report feature off.

In a strained analysis, the district court began by determining what information was "recorded information" and thus a public record subject to disclosure under KORA. The court noted that "[t]he data regarding provisional ballots input into ELVIS by the various county election officials is recorded information." In other words, the raw data is the only public record.

But then the district court held that the statewide provisional ballot detail report was merely a functionality, describing it as "the result of a set of computer programming commands that can be removed from or added back to ELVIS" and "a way of packaging data that may exist in the ELVIS database with proper programming." The court found that the provisional ballot detail report became "'recorded information' only if [it was] generated by the use of a computer program." Only when it is generated can the report be considered a public record.

With these comments, the district court erroneously tried to create a "functionality exception" to KORA. In other words, the data are the public record but the tools to make

13

sense of that data are not a public record. The district court's ruling allows a public official to say to a KORA requester, "You can have the data because that is recorded information but we are not going to find it for you because our office cannot access that 'functionality' of the computer and therefore this is not subject to KORA." That ruling nullifies KORA in this age of computer records.

We see no functionality exception to KORA. In truth, we categorically disagree with the district court's holding to the contrary. That ruling would allow all computer records of public information to become inaccessible through the simple manipulation of what the computer system is asked to do. If we hold that the recorded information of public records is limited to just the data that is collected and not the programs that make it useful, there is no other means to access that data—that public record—other than the computer's software. That effectively seals computer records.

We acknowledge that the binary code—that series of zeros and ones—that make up the memories stored in a computer are recorded information, but that information is useless in that form. The fallacy in the district court's ruling is that it makes the recorded information accessible only to the government if the agency deliberately will not use its computer to make that public record accessible to the public. The public cannot reach into ELVIS's computer memories and scoop out handfuls of zeros and ones and thus have access to what KORA says it has a right to. Computers require software commands that render the data contained within them usable. This provisional ballot detailed report is generated from such a computer command. That report feature of ELVIS is a public record, too. It is subject to a KORA request. Just because a public record must be generated by a report function, that does not remove that record from the purview of KORA.

When the district court ruled in the first case that the report was a public record, it was right. The data were rendered into usable form—the provisional ballot detail report.

It is not as if Hammet is forcing the Secretary to create a new software feature to generate and have access to this report. This is a case in which the Secretary deliberately had the software changed so that Hammet, or anyone else in the public, had no access to the report. That denial of access violates the spirit of KORA as expressed in K.S.A. 45-216 that says that public records must be open for inspection to any person. A person cannot inspect public records stored in a computer without the appropriate software. Deliberately removing that software capability renders the records unopen for inspection and violates KORA.

Hammet is entitled to summary judgment on this point.

*The fee the Secretary wanted to charge is unreasonable.*

The second issue Hammet raises is whether the district court erred in holding that the Secretary requested a reasonable fee for the provisional ballot data report. He argues that the fee is unreasonable because the Secretary imposed it with the intent to discourage Hammet from following through with his KORA request. Hammet also argues that it is unreasonable for the Secretary to charge $522 for the report when the Secretary could simply restore its access to the provisional ballot detail report. We find Hammet's argument persuasive. From the record, it appears the report feature still exists in ELVIS and the Secretary can ask ES&S for access to it. The Secretary's claim that he no longer can produce the data to generate a report is disingenuous.

KORA allows public agencies to "prescribe reasonable fees for providing access to or furnishing copies of public records," subject to certain rules. K.S.A. 2020 Supp. 45-

15

219(c). The fees for copies of records "shall not exceed the actual cost of furnishing copies, including the cost of staff time required to make the information available." K.S.A. 2020 Supp. 45-219(c)(1). The fees for providing access to records maintained on computer facilities "shall include only the cost of any computer services, including staff time required." K.S.A. 2020 Supp. 45-219(c)(2).

The Secretary's three arguments on this issue are unconvincing. First, he argues that any report generated by ES&S would not be a public record. The definition of "public agency" in K.S.A. 2020 Supp. 45-217(f)(2)(A) does not include "[a]ny entity solely by reason of payment from public funds for property, goods or services of such entity." The Secretary asserts that he lacked the capability to provide the information Hammet requested and, because the Secretary had to contact a private agency to produce the requested information, the fee for the production of the report is not subject to KORA.

The problem with this argument is that the Secretary *does* possess the requested public record—the provisional ballot data. Just because the Secretary had to contact a third party to produce the public record in response to Hammet's KORA request does not mean that the production of the public record is removed from KORA's requirement that an agency prescribe reasonable fees for providing access to those records.

The Secretary compares this situation to

"a hypothetical KORA request to the Secretary for access to a historic book, to which the Secretary responds that it no longer has possession of the book but could obtain it for the requester from a specialty book seller, if the requester reimbursed the Secretary for the out-of-pocket cost."

16

This is a false analogy. In this case, the Secretary *does* possess the "book"—the provisional ballot data—that Hammet requested.

Second, the Secretary argues that the fees it proposed for access to the data were reasonable and less than the actual cost the Secretary would face in fulfilling Hammet's KORA request. This was because the fees did not include the cost of agency staff time, but only included ES&S's quoted fee. The Secretary stresses that agencies may recoup the actual costs of fulfilling KORA requests. But again, this argument fails because the record shows that it would cost the Secretary little to nothing to ask ES&S to restore the report feature and thus have access to the data.

Third, the Secretary notes that Hammet could have sought the information from an alternative source—the counties. Each county had the ability to generate a provisional ballot detail report. The Kansas Supreme Court has already rejected the argument and held that there is no "provision or exemption in KORA allowing a public agency to refuse to produce records because such records are available from another or a more 'appropriate' source." *Wichita Eagle & Beacon Pub. Co. v. Simmons*, 274 Kan. 194, 222, 50 P.3d 66 (2002). The Secretary's argument also ignores the practical reality that requesting a report from each county is much more onerous than requesting a single report from the State. Hammet's experience with such an endeavor failed.

The Secretary also states that it was "above and beyond its statutory duty" to ask ES&S if it could generate the requested information. While a "custodian may refuse to provide access to a public record, or to permit inspection, if a request places an unreasonable burden in producing public records," there is no indication in the record that contacting ES&S imposed an unreasonable burden on the Secretary. See K.S.A. 45-218(e). Many public agencies may use third-party software to maintain public records. Allowing public agencies to decline KORA requests because they need not work with the

17

companies they have hired to maintain the records software is not supported by the language or spirit of KORA.

The Secretary "admits that he could simply ask ES&S to restore the statewide provisional ballot detail report functionality, but he has not done so." In light of that, we hold that it is not reasonable to charge a fee of $522 when the Secretary could provide the report for no cost. We limit this analysis to the unique facts here where the report feature already existed and the Secretary had it removed. This is not a case in which Hammet is asking for the creation of a new software feature.

*Our ruling*

What can be turned off can be turned on. When the Secretary directed ES&S to turn off the computer feature that generates the provisional ballot detail report—a report correctly declared to be a public record—he denied reasonable public access to that public record. That denial of public inspection of a public record violates the Kansas Open Records Act. The Secretary cannot now charge a fee for this report in conformity with his prior actions simply because he had the report feature turned off. Under the circumstances presented here, where several reports have been given to Hammet at no charge, to charge a fee now would be unreasonable.

We therefore reverse the district court's grant of summary judgment to the Secretary and its denial of Hammet's motion for summary judgment. We remand to the district court with directions to enter judgment for Hammet over the Secretary. We direct the court to order the Secretary to restore the provisional ballot detail report feature to ELVIS so the public can have access to that public record.

Reversed and remanded with directions.

18